Joseph C. CALIO, III, et al., Plaintiffs,

v.

**PENNSYLVANIA DEPARTMENT
OF TRANSPORTATION, et
al., Defendants.**

No. CIV. A. 98–2370.

United States District Court,
E.D. Pennsylvania.

June 26, 2000.

Robert B. Famiglio, Famiglio & Associates, Media, FL, for Plaintiffs.

James G. Sheehan, Annetta Foster Givhan, United States Attorney's Office, Philadelphia, PA, for Defendants.

### MEMORANDUM AND ORDER

KATZ, Senior District Judge.

Now before the court are the parties cross-motions for summary judgment in this action challenging an agency's decision under the Administrative Procedure Act (APA).

## I. Background [1]

### A. The Trail

This litigation concerns a long-standing and highly contentious plan to develop an abandoned train track in Radnor Township as a public multi-use trail. The Pennsylvania Department of Transportation (Penn-DOT) acquired the right-of-way along the track from the former Pennsylvania and Western Railway Company (P & W) in 1955. *See* Administrative Record (AR) at 467. In 1976, PennDOT reached an agreement with the township to use the area for a bicycle and hiking path. *See id.* at 526–29.

In February 1994, PennDOT applied for federal funds under the Congestion Mitigation and Air Quality program (CMAQ), 23 U.S.C. §§ 104(b)(2), 217, to develop the P & W track into a 2.2 mile-long, multi-use path (P & W trail or trail project). *See id.* at 367–69. Eighty percent of the project's budget was to be provided by the federal funds, with PennDOT sponsoring the balance. *See id.* at 467. In December 1994, the Delaware Valley Regional Planning Commission (DVRPC) approved Penn-DOT's application.[2] *See id.* at 813–14. Apparently, PennDOT's commitment to developing the P & W trail was contingent upon Radnor Township's favorable or neutral disposition towards the project. *See id.* at 467. The township indicated its support of the project in May 1995, when a township referendum asking whether the agency should proceed with the trail project passed with a 61% "yes" vote and carried thirteen out of the township's fourteen precincts. *See id.* at 424–25.

PennDOT planned that the project would proceed in three stages: a preliminary engineering stage, a final design stage, and a construction stage. In September 1996, PennDOT requested funds for the preliminary engineering stage of the project from the Federal Highway Administration (FHWA). The agency approved the request and committed the federal funds on October 10, 1996. *See id.* at 90–97; Def. Renewed Summ. J. Mem., Ex. A ¶ 12. PennDOT's contractor completed a central component of the first stage, a feasibility study, in November 1998. *See* AR at 530–61.

In February 1999, the issue of the trail came before the township again, this time to decide whether Radnor would accept the responsibility of maintaining the trail. The Board of Commissioners voted "yes," in effect reaffirming the township's support of the project. *See id.* at 574.

As of June 2000, the FHWA obligated funds for the second phase of the project, the final design stage. *See* Def. Renewed

---

1. All facts are taken from the Administrative Record filed by the FHWA on May 13, 1999 (doc. no. 39).

2. The DVRPC was originally a defendant in this litigation. Both the DVRPC and Penn-DOT were dismissed on Eleventh Amendment grounds. *See* Orders of July 13, 1998, and July 14, 1998. The record does not reveal the DVRPC's precise role in the fund allocation process, but it seems that the DVRPC's approval was a prerequisite to obtaining federal approval for CMAQ funds. *See* AR at 813–14

(Dec. 14, 1994, letter from the DVRPC approving trail project for CMAQ funds); *see also id.* at 128 (Sept. 24, 1996, letter from the Federal Highway Administration (FHWA), stating that "the DVRPC has the prerogative to select Federally funded transportation projects within their jurisdiction"); *id.* at 132 (July 30, 1996 letter from the DVRPC explaining that while approval for the actual funding will be coordinated between PennDOT and the FHWA, the DVRPC "will periodically conduct reviews" of the project's status.).

Summ. J. Mem., Ex. A ¶ 13; *id.*, Ex. B ¶¶ 3–4. Although construction has not yet begun on the trail, *see id.*, Ex. B ¶ 5, the FHWA represents that it "will obligate funds for the next stage of the trail project upon request and with PennDOT's assurance ... that all eligibility requirements have been met." *Id.*, Ex. A ¶ 14.

## B. The Agencies

Although this suit challenges the final decision of a federal agency under the APA, PennDOT performed much of the review of the trail project. The court, therefore, will briefly examine the relationship between the federal and state agencies. The P & W trail is a non-National Highway System federal aid project and, under federal law, subject to an exemption agreement between PennDOT and the FHWA. *See* 23 U.S.C. § 106(b)(2)(1991) (amended 1998); *id.* § 117(a) (1991) (repealed 1998).[3] The state and federal agencies entered into the exemption agreement relevant to the instant case in 1992, *see* AR at 577–621, and revised it slightly in a manner not relevant to this action in 1993. *See id.* at 622–26. The agreement provides, *inter alia,* that "PennDOT will assume the responsibilities assigned to the FHWA under Title 23 for Federal-aid projects[,]" and that the agreement "does not replace the fundamental provisions of law in Title 23 with respect to the basic structure of the Federal-aid program." *Id.* at 588.[4]

Relying on the exemption agreement, the FHWA assumes that PennDOT's actions are properly considered to be those of the federal agency for purposes of this APA review. *See, e.g.,* Def. Renewed Summ. J. Mem. at 8–10, 16. The plaintiffs agree that PennDOT had the authority to certify that the P & W trail complied with federal requirements. *See* Pls. Summ. J. Mem. at 3[5]; Pls. Resp. at 10. Their contention that the federal agency retained ultimate responsibility regarding the trail project does not undercut the FHWA's position. Thus, for purposes of convenience, the court will refer to only to the FHWA as the agency under APA review.

## C. The Opposition

Throughout all these events, some Radnor residents, led most vocally by plaintiff Joseph Calio, persistently opposed the trail project. Most of the active opponents

---

**3.** The version of section 106(b)(2) that was in force in 1994 when PennDOT made its initial application for funding provided that:

> Any state may request that the Secretary no longer review and approve plans, specifications, and estimates for any project (including any highway project on the National Highway System with an estimated construction cost of less than $1,000,000 but excluding any other highway project on the National Highway System). After receiving such notification, the Secretary shall undertake project review only as requested by the State.

23 U.S.C. § 106(b)(2)(1991) (amended 1998).

> The version of section 117(a) that was in force in 1994 provided that:
> The Secretary may discharge any of his responsibilities under this title ..., except projects on the Interstate System, upon the request of any State, by accepting a certification by the State highway department [or responsible state agency or official] ... of its performance of such responsibilities, if

> [the Secretary] finds such projects will be carried out in accordance with State laws, regulations, directives, and standards which will accomplish the policies and objectives contained in or issued pursuant to this title.
> *Id.* § 117(a) (1991) (repealed 1998).

**4.** Due to the exemption agreement, PennDOT was in the anomalous position of being the agency that applied for federal funding for the P & W trail, *see* AR at 367, and the agency that facilitated the release of those funds. *See id.* at 813–14 (Dec. 14, 1994, letter from the DVRPC approving PennDOT's application for CMAQ funding and directing applicant Greg Brown of PennDOT to contact himself "concerning the schedule and procedures for acquiring federal authorization to proceed.").

**5.** Plaintiffs filed an earlier motion for summary judgment that was denied without prejudice when this case was placed in civil suspense. *See* Order of June 21, 1999. All references to plaintiffs' motion for summary judgment and the supporting memorandum are to the June 5, 2000, motion.

own property bordering the P & W trail site. *See* AR at 466. In a letter he wrote to a local television station to draw attention to his cause, Calio vowed, "I will do anything to keep this 'trail' from my backyard," *id.* at 511, and he has been true to that promise. He formed an organization called C.A.R.E. (Continued Action for the Radnor Environment) to sponsor townwide mailings urging residents to vote down the referendum on the "Pork & Waste Trail to Nowhere," wrote letters to various state and national elected officials, and even started a petition drive in an unsuccessful attempt to recall the pro-trail president of the Township Board of Commissioners. *See, e.g. id.* at 399, 405–16, 769.

As these efforts failed, Calio and three like-minded neighbors now bring suit under federal law to keep the P & W trail out of their backyards. They originally sued PennDOT, the DVRPC, and the FHWA, alleging that the trail does not qualify for federal funding because it is principally for recreation rather than transportation, as required by federal law.[6] This court dismissed PennDOT and DVRPC on Eleventh Amendment grounds. *See* Orders of July 13, 1998 and July 14, 1998.

II. Discussion

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c). Because, under the APA, the court bases its decision on a review of the administrative record, *see* 5 U.S.C. § 706; *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 744, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985), there are no genuine issues of material fact in this matter. *See Clairton Sportsmen's Club v. Pennsylva-*

*nia Turnpike Comm'n,* 882 F.Supp. 455, 463 (W.D.Pa.1995).

A. Standard of Review Under the APA

■ A federal agency's informal action is subject to judicial review under the APA except where there is a statutory prohibition against review or where action is committed to the agency's discretion by law. *See* 5 U.S.C. § 701; *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). "The reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). The agency's decision "is entitled to a presumption of regularity[,] ... [b]ut that presumption is not to shield [the agency's] action from a thorough, probing, in-depth review." *Overton Park,* 401 U.S. at 415, 91 S.Ct. 814 (citations omitted). "[T]he court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* at 416, 91 S.Ct. 814. Thus, while the "inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one." *Id.*

■ The court should review the agency decision based on the record before the agency at the time it made its decision. *See id.* at 420, 91 S.Ct. 814; *see also* 5 U.S.C. § 706 ("[T]he court shall review the whole record or those parts of it cited by a party[.]"). However, "[a] document need not literally pass before the eyes of the final agency decisionmaker to be considered part of the administrative record." *Clairton Sportsmen's Club,* 882 F.Supp. at 465.

---

**6.** The suit originally contained two other claims: that the project failed to meet funding requirements because no entity had accepted the responsibility of maintaining the trail, and that the trail would infringe on plaintiffs' privacy. The Radnor Township's vote in February 1999 to provide maintenance mooted the first argument. The second claim, although it seems to be the real heart of plaintiffs' opposition to the trail, is not cognizable under the APA, and plaintiffs appear to have abandoned it.

In sum, the central question is whether the record supports the FHWA's decision, not whether a different decision would have been better, or even whether with more information, it might or should have decided differently. Given the parties' repeated attempts to persuade the court that the trail is or is not principally for transportation, this point bears repeating: it is not up to this court independently to determine whether the trail is principally for transportation. *See, e.g., Overton Park,* 401 U.S. at 416, 91 S.Ct. 814 (stating that the reviewing "court is not empowered to substitute its judgment for that of the agency."). That is a decision legally left to the expertise of the FHWA and this court is called upon only to decide whether the FHWA's conclusion was supported by the record before it at the time. As noted by the district court in a case where the agency's decision similarly generated heated debate:

> Indeed, the obvious and intrinsic importance of [the] issues [surrounding the agency's decision] may make it difficult to accept that a court cannot influence related decision-making, and can exercise authority over such cases only under fairly narrow conditions. It is not that the Court considers these issues any less important. Rather, the law firmly recognizes that the elements that make up such decisionmaking are so diverse that they are consigned to officials and agencies with specialized knowledge, experience, resources, and mechanisms for broad public participation that a court does not possess . . . . We are not free to weigh the many competing interests underlying these issues.

*Clairton Sportsmen's Club,* 882 F.Supp. at 460.

### B. Final Agency Action

 Unless a statute provides otherwise, only a final decision of the agency is subject to review under the APA. *See* 5 U.S.C. § 704. "The requirement of a final agency action has been considered juris-dictional. If the agency action is not final, the court therefore cannot reach the merits of the dispute." *DRG Funding Corp. v. Secretary of HUD,* 76 F.3d 1212, 1214 (D.C.Cir.1996) (citation omitted). The APA, however, does not define what constitutes a final agency action. The Supreme Court has stated that, in determining finality, the "core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Franklin v. Massachusetts,* 505 U.S. 788, 797, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992); *see also Hindes v. FDIC,* 137 F.3d 148, 162 (3d Cir.1998) (discussing standards to be applied in determining whether an agency action is final); *Shea v. Office of Thrift Supervision,* 934 F.2d 41, 44 (3d Cir.1991) (holding that "the finality of [an agency action] is determined by its consequences."). The inquiry is a pragmatic one. *See FTC v. Standard Oil Co.,* 449 U.S. 232, 238, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980).

The question of when the agency's action became final has received scant attention from either side. The FHWA contends that the parties agree that the decision to construct the trail became final on February 16, 1999, when the Radnor Township Board voted to maintain and operate the trail, since this is the point when the project met one of the regulations' eligibility requirements. *See* Def. Renewed Summ. J. Mem. at 11 n. 9; *see also* 23 C.F.R. § 652.7(b)(3)(i) (imposing requirement that a public agency formally accept responsibility for the operation and maintenance of the project). Plaintiffs, however, appear to disagree with this assertion, implying that the agency action was final on October 10, 1996, when the FHWA obligated monies to fund the first stage of the project. *See* Pls. Summ. J. Mem. at 9 n. 1. The court will assume for the purposes of deciding this motion that October 10, 1996, was the date that the FHWA's action became final because even under the date proposed by

plaintiffs, the agency's determination that the project was principally for transportation was not arbitrary and capricious

### C. Principally for Transportation

■ In cases where, as here, the agency's action is informal, its enabling statute establishes the scope of the agency's authority and indicates the relevant factors that it must consider in arriving at its decision. *See C.K. v. New Jersey Dep't of Health and Human Serv.*, 92 F.3d 171, 182 (3d Cir.1996).

### 1. Statute, Regulations and "Guidance"

According to the relevant statute, "No bicycle project may be carried out under this section unless the Secretary has determined that such bicycle project will be principally for transportation, rather than recreation, purposes." 23 U.S.C. § 217(i). Likewise, the FHWA's implementing regulation requires that bicycle projects "must be principally for transportation rather than recreational use." 23 C.F.R. § 652.7(a). The FHWA's interpretation of the statute and its regulations is contained in its "Guidance on Transportation Use for Bicycle and Pedestrian Projects":

> Where Federal-aid highway funds are used, these projects should indeed serve a transportation function. A circular recreation path within a park, for example, would not be eligible. However, any type of facility which does serve a valid transportation need while also fulfilling recreation purposes would be eligible. Determinations of the eligibility of specific bicycle and pedestrian projects will continue to be made by the Division Administrators using this guidance.

Def. Renewed Summ. J. Mem. Ex. A(1).[7]

■ It is an established legal principle that a court must defer to an agency's reasonable construction of a statute. *See Chevron U.S.A., Inc. v. Natural Resources*

*Defense Council, Inc.*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Although the agency's interpretation is substantively slight, merely indicating that a circular track within a park is not principally for transportation, the court finds that this limited guidance is reasonable and entitled to deference.

### 2. The Administrative Record as of October 10, 1996

■ The central issue in this case, then, is whether the FHWA's determination that the trail project would be principally for transportation was arbitrary and capricious. Upon review of the record before the agency on October 10, 1996, the court concludes that the FHWA's decision was well within its discretion.

PennDOT's application for federal CMAQ funds states that the trail is to facilitate transportation, as well as provide recreational opportunities. *See* AR at 368. According to the application, the purpose of the project is to "reduce reliance on motor vehicles to reach destinations within Radnor [Township and] areas beyond." *Id.* PennDOT indicated that the project would reduce vehicle miles of travel, number of vehicle trips, and the amount of congestion in the surrounding area. *See id.*

The location of the trail also supports the agency's conclusion that it will be used for transportation. The FHWA knew that the trail would largely run parallel to Conestoga Road and, for a short distance, to Lancaster Avenue, intersecting five other roads along its path. *See e.g.*, AR at 690 (map of proposed trail). The FHWA had been informed that there were various travel destinations along the trail's projected path, including "numerous township parks, recreational facilities, schools, shops, restaurants, post offices, public buildings, office parks, [and] churches," as well as "several SEPT regional commuter

---

**7.** Plaintiffs concede that the federal funds may be used for trails that provide, in part, for recreational activities as well as for transportation purposes. *See* Pls. Summ. J. Mem. at 5.

rail stations (Strafford, Wayne, St. Davids and Radnor on the R5 line; Radnor on the Norristown Line) and bus routes along Lancaster Avenue." *Id.* at 374 (Nov. 29, 1994, letter from Mary B. Coe, Friends of Radnor Trails, regarding the advantages of the trail project); *see also id.* at 367 (PennDOT's application, noting that trail would originate near a park); *id.* at 438–39 (Apr. 18, 1994, letter from Howard Yerusalim, Secretary of Transportation, stating that the trail would begin at a park "and then continue[ ] adjacent to ... a driving range, playing fields, and the Radnor Township Municipal Building. The trail [would] also [be] located within a half mile of the Wayne–Strafford shopping district and terminate[ ] at a shopping plaza and health club."); *id.* at 516 (Jan. 15, 1996, letter from Edward J. Carney, Jr., stating that "it is extremely dangerous to walk anywhere" in Wayne); *id.* at 450 (Apr. 14, 1994, letter from PennDOT, author unknown, noting that the agency anticipates that most of the users of the trail will be township residents). *But see, e.g., id.* at 440 (Mar. 8, 1994, letter from Calio stating that the trail would "lead[ ] nowhere and fail[ ] to connect with the Radnor Corporate Center."). The agency's decision that the trail would be used principally for transportation is supported by the administrative record.

Additionally, this decision is clearly in keeping with the FHWA's interpretation of the statute and regulations. Rather than a circular path within a park, the project envisions a linear trail that would run parallel to two roadways, intersect five others, and render accessible various travel destinations. In sum, the agency's decision that the P & W trail would be principally for transportation is not arbitrary and capricious.

Plaintiffs vigorously attack the quantity and quality of evidence before the agency. These arguments, however, fail to appreciate the limited scope of the court's review under the APA, as well as the broad discretion vested in a federal agency to interpret a statute that it is charged with enforcing. Plaintiffs' assertion that there is a lack of any factual basis for the agency's conclusion is, as noted, belied by a review of the administrative record.[8] Nor is the court persuaded by plaintiffs' reliance on *Motor Vehicle Manufacturers Association of the United States, v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983), and *In re Bell Petroleum Services, Inc.,* 3 F.3d 889 (5th Cir.1993). While *Motor Vehicle* emphasized that an agency should articulate a reason for its decision, it also stated that "[w]e will, however, uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Id.* at 43, 103 S.Ct. 2856 (citations, punctuation omitted). Moreover, unlike the instant case, *Motor Vehicle* addressed an agency's recission of one of its regulations: rulemaking by a federal agency generally requires that, at a minimum, the agency state a basis for its decision. *See id.* at 41, 103 S.Ct. 2856 (finding that the procedural provisions of the APA applied to the agency's recission of the regulation at issue); 5 U.S.C. § 553 (detailing informal rulemaking procedure, including notice provisions and requirement that the agency incorporate in the rules "a concise general statement of their basis and purpose."). In *Bell,* the court simply found that there was not a "shred of evidence" supporting the agency's decision. 3 F.3d at 905.

■ Plaintiffs also contend that, because the FHWA failed to conduct a use study before concluding that the trail would be principally for transportation,

---

**8.** Plaintiffs point to several incomplete answers on funding the application as an indication that the FHWA did not have sufficient information before it to determine the purpose of the P & W trail. These questions asked the applicant to indicate percentages of work and non-work trips within specific distances of the project. *See* AR at 371. The court finds that even without the missing information, the record provides a sufficient factual basis for the agency's determination.

the agency's decision is unsupported by the record. However, plaintiffs confuse the lack of a study with the lack of a factual basis for the agency's decision. Neither the statute nor the regulations require that any such study be conducted. Where the statute or regulations do not require the agency to make formal findings supporting its decision, the absence of such findings is not a sufficient basis for reversal of the agency's determination. *See C.K.*, 92 F.3d at 182–83; *see also Overton Park*, 401 U.S. at 417, 91 S.Ct. 814 ("[A]lthough formal findings may be required in some cases in the absence of statutory directives when the nature of the agency action is ambiguous, those situations are rare."); *Clairton*, 882 F.Supp. at 480 (rejecting plaintiff's argument that agency violated the APA by failing to provide sufficient public participation because the applicable interim regulations did not require public participation). "If our review of the record satisfies us that the materials before the ... [agency decision-maker] sufficed for a consideration of the relevant factors ... and that there was not clear error of judgment ..., then we may not disturb the ... decision." *CK*, 92 F.3d at 183 (citation, punctuation omitted). It is undeniable that the FHWA's position would be stronger had it undertaken a study to determine whether the trail would be used principally for transportation prior to releasing the funds. However, failure to do so is not fatal, given that the agency was not required to conduct such a study and that there is an adequate factual basis in the record to support its decision.[9]

Finally, plaintiffs argue that the FHWA abused its discretion in accepting PennDOT's certification that the state agency would meet all applicable requirements before approving a project for receipt of federal funds, rather than conducting an independent inquiry into the trail project's conformity with federal statutes and regulations. That is, while plaintiffs concede that the FHWA could properly delegate its authority to PennDOT under 23 U.S.C. § 106(b)(2) and § 117(a), *see* Pls. Summ. J. Mem. at 3; Pls. Response at 10, they attempt to undercut the purpose of the exemption agreement by requiring the federal agency to continue to exercise strict oversight over the state. The plaintiffs cite no authority for their position that once the FHWA properly delegated its authority to the state agency, the federal agency was required to scrutinize every decision of PennDOT. The court rejects this argument as inconsistent with the exemption agreement.

### III. Conclusion

The agency's determination that the P & W trail was principally for transportation was not arbitrary and capricious or an abuse of discretion.

---

9. In addition to decrying the lack of a use study before the initial funds were obligated, plaintiffs expend considerable energy assailing the study that was conducted by the agency after this litigation began. The court, however, finds that consideration of the study is inappropriate, given that the FHWA had an adequate factual record before it when it rendered its decision.