59 N.J. Super. 487 (1960)
158 A.2d 214
CELIA BECHEFSKY AND JACOB BECHEFSKY, PLAINTIFFS-RESPONDENTS,
v.
THE CITY OF NEWARK, NEW JERSEY, A MUNICIPAL CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 8, 1960.
Decided February 11, 1960.
*490 Before Judges GOLDMANN, CONFORD and FREUND.
Mr. James E. Abrams argued the cause for appellant (Mr. Vincent P. Torppey, Corporation Counsel, attorney; Mr. Jacob M. Goldberg, on the brief).
Mr. Samuel H. Nelson argued the cause for respondents (Mr. Sidney Swirsky, attorney).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiff Celia Bechefsky sued for injuries suffered when she tripped and fell at the corner of Thomas and Brunswick Streets, Newark, on the night of October 23, 1956. Her husband sued per quod. The suit was grounded in negligence and the maintenance of a nuisance. The original defendants were the City of Newark and the owners of the corner apartment house, the Ganeks.
The trial court, on motion, dismissed the action against the Ganeks at the close of the testimony relating to liability, but denied a similar motion made on behalf of the city. The jury returned a verdict of $3,500 for Celia Bechefsky and $1,500 for her husband. After judgment was entered the city moved for a new trial alleging, among other things, that the verdict was against the weight of the evidence and the result of mistake, partiality, prejudice and passion; it was excessive; the trial court erred in not admitting a contract between the city and the independent contractor who was doing the street and curb work at the corner in question, and was in error in charging that the city was an agent of the independent contractor (what was actually meant was that the contractor was an agent of the city). The motion was denied and this appeal followed.
Celia Bechefsky, 68 years of age, testified that she was walking west on the right (north) side of Thomas Street on her way home from a bingo game. When she came to the corner of Brunswick Street she started to cross, tripped on the sidewalk and fell into the street, sustaining the injuries complained of.
*491 Plaintiffs' witness, a Mrs. Manly, testified that she was walking a few yards behind plaintiff when she saw her fall. The night was very dark, and she said there were no lights or barriers at the corner.
On the date of the accident about half a mile of Brunswick Street was in the process of being repaved under a state-aid project contract awarded by the city to Nesto Brothers. This involved, among other things, the resetting or replacing of existing curbs. The testimony and the pictures in evidence establish that new iron curbs of greater radius had been installed at each of the corners of the Brunswick and Thomas intersection. They were set farther back than the old curbs; this involved breaking up the sidewalk behind the curbs and resulted in a rough space being left between the old and new locations of the curbing. The pictures show that on the night in question the areas in front of and behind the new iron curbs were quite irregular in surface and contained accumulations of dirt, broken cement and other foreign matter. Eventually these street areas would have been repaved and the broken sidewalks resurfaced by Nesto.
The city engineer testified that he was supervising engineer on the repaving job. Two city inspectors under him saw to it that the materials and construction complied with the city's specifications, but they did not actually direct any of the work done by Nesto.
The city argues three points on this appeal: (1) it was immune from liability because the work was done by an independent contractor, and the trial court's failure so to instruct the jury constitutes reversible error; (2) the verdict was against the weight of evidence, and the trial court's failure to grant a new trial constituted an erroneous exercise of discretion; and (3) the trial court committed error in failing to instruct the jury that the city would be liable only if it actively participated in creating the condition complained of. We will consider the arguments in that order.
In his charge the trial judge instructed the jury that the city was performing a proper governmental function *492 when it undertook to reset the curbs and fix the sidewalks after the resetting, and if in doing so the city actively did something which was negligent or created a nuisance, as a result of which Mrs. Bechefsky fell and sustained injuries, then the city would be liable to respond in damages. He then went on to say that the mere fact that the city did not do the work with its own employees, but hired Nesto Brothers, was entirely immaterial because Nesto was acting as its agent. The city claims that the latter instruction was reversible error.
The city did not specifically object to the portion of the charge under attack, and therefore should be foreclosed from asserting error. R.R. 4:52-1 provides that "No party may urge as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of the objection." The attorney for the city made only a "general exception" at the close of the charge. A general objection no longer suffices. King v. Jones, 47 N.J. Super. 279, 284-285 (App. Div. 1957). Assuming the criticism now made of the particular instruction to be well founded, the timely objection required under the quoted rule as a corrective process was not made.
Nor do we find plain error affecting substantial rights, under R.R. 1:5-3(c) and R.R. 2:5; cf. Harpell v. Public Service Coordinated Transport, 20 N.J. 309, 318 (1956), affirming 35 N.J. Super. 354 (App. Div. 1955); Lertch v. McLean, 18 N.J. 68, 73-74 (1955), for even upon the merits, the city's contention is vulnerable.
Basic in New Jersey municipal law is the fact that the ownership in land over which a street has been laid is, for all substantial purposes, in the public. Although the owner of abutting property retains the naked fee to the middle of the street, it is subject always to the public right of passage. Saco v. Hall, 1 N.J. 377, 382 (1949). The sovereign power over land lying within street lines is lodged in the municipality; its has been the responsibility from *493 earliest days to see to the maintenance and care of public thoroughfares. So it is that a city street and every part of it is so far dedicated to the public that any act or obstruction that unnecessarily incommodes or impedes its lawful use by the public is a nuisance. The traveling public has a right to assume that there is no dangerous impediment or pitfall in any part of it. Durant v. Palmer, 29 N.J.L. 544, 547-548 (E. & A. 1862); Saco v. Hall, above; Messier v. Clifton, 24 N.J. Super. 133, 138 (App. Div. 1952), certification granted 12 N.J. 247 (1953) (safety island in center of highway); Fredericks v. Dover, 125 N.J.L. 288, 290 (E. & A. 1940) (metal covering on storm gutter located within street lines); Reardon v. Wanaque, 129 N.J.L. 18, 21 (Sup. Ct. 1942) (unguarded trench near curb installation). A municipality is charged with responsibility if it was an active agent or instrument in the creation of the perilous condition. Fredericks v. Dover, above.
The claim here is that the city was insulated from liability because the sidewalk or street condition which brought on Mrs. Bechefsky's fall was the work of an independent contractor. The law is to the contrary. A municipality has the duty of maintaining its streets in reasonably safe condition for public travel. That duty is non-delegable, except in the instance where a statute specifically permits such delegation. (An example of such a statute is R.S. 40:180-2, relating to the construction, maintenance and repair of curbs and sidewalks by adjoining owners under a properly adopted general ordinance. See Moskowitz v. Herman, 16 N.J. 223, 228 (1954). Here, of course, the city undertook to repave Brunswick Street and reset the curbs under a state-aid project, using the Nesto firm for the purpose.)
The great weight of authority is that a municipality, if it permits the public to use a street wherein it is causing improvements to be made, cannot avoid liability for excavations or other defects resulting from the work, merely because the improvements are being done by an independent contractor. The municipality remains answerable for his active *494 wrongdoing; it cannot escape liability where the independent contractor has acted in a negligent manner or created a nuisance. Reardon v. Wanaque, above; Karpinski v. South River, 85 N.J.L. 208, 209-210 (E. & A. 1913); 18 McQuillin, Municipal Corporations (3d ed. 1950), § 53.76, p. 346 et seq.; 27 Am. Jur., Independent Contractors, § 50, p. 528 (1940); 63 C.J.S. Municipal Corporations § 766, p. 58, and particularly § 766(d) (3), pp. 61-62 (1950). Terranella v. Union Bldg. & Construction Co., 3 N.J. 443 (1950), on which defendant relies, is not to the contrary.
There can be no question whatever that the condition of the sidewalk and street immediately adjacent to the curb at the corner where Mrs. Bechefsky fell was a nuisance created by the negligence of Nesto and which was permitted to go uncorrected by the city inspectors who were bound to see to it that the work was properly done. There were no lights, barricades or other warning device, and the sidewalk and street at the corner where plaintiff fell was, as described, broken, uneven, and covered with dirt, bits of concrete and stone. That such a condition, even though temporary, might be created by Nesto in the course of its work was reasonably foreseeable. The city engineer who testified said that in resetting curbs it was necessary to break up the adjacent sidewalks and contiguous street surfaces.
Defendant next contends that the verdict was contrary to the weight of evidence. It points out that Mrs. Bechefsky's testimony was that she tripped at the northeast corner of the intersection, while the testimony of Mrs. Manly and the superintendent of the Ganek apartment house indicated that the northwest corner was involved. Mrs. Bechefsky obviously lacked the ability to express herself adequately. A close reading of the record leads us to conclude that any discrepancies in the testimony adduced by plaintiffs were more apparent than real. Mrs. Bechefsky did fall at the corner in the process of crossing Brunswick Street. If she fell on the sidewalk, it was in a part that was torn up, close enough to the curb to result in her falling directly into the *495 street. And if she fell in the street, it was at a point close to the curb and in the torn-up area created by the contractor in setting the curb back.
In any event, the jury was the ultimate judge of the facts. Its province was to resolve all fact disputes, discrepancies or inconsistencies. It had the benefit of personal observation of the witnesses, particularly Mrs. Bechefsky, and could assess their credibility. Plaintiffs were not obliged to establish every detail of their case to an absolute certainty. We find that the verdict was amply supported by the evidence.
The trial judge was obviously of the same opinion. He, like the jury, had the benefit of hearing all the testimony and observing the witnesses, and he refused to grant the new trial for which the city moved. That application was, of course, addressed to his discretion, and we will not disturb his determination, absent a clear abuse of that discretion. Hartpence v. Grouleff, 15 N.J. 545, 549 (1954); Sokol v. Liebstein, 9 N.J. 93, 99 (1952); Hager v. Weber, 7 N.J. 201, 210 et seq. (1951); R.R. 1:5-3(a), 2:5.
Finally, defendant argues reversible error because the trial court failed to charge that plaintiffs had to prove the city had participated in active wrongdoing through responsible municipal officials before it could be held liable. There was no such request to charge, as required by R.R. 4:52-1, and therefore the city is in no position to claim error. We find no failure of substantial justice. R.R. 1:5-3(b) and (c); 2:5.
Affirmed.