**NEW JERSEY PAYPHONE ASSOCIATION INC., a not for profit corporation organized under the laws of New Jersey, Plaintiff,**

v.

**TOWN OF WEST NEW YORK, Defendant.**

**No. Civ.A. 00–1843.**

United States District Court,
D. New Jersey.

March 7, 2001.

Jeffrey A. Donner, Stryker, Tams & Dill, Newark, NJ, for plaintiff.

Joseph R. Mariniello, Mariniello & Mariniello, Fort Lee, NJ, for defendant.

## OPINION

WOLIN, District Judge.

This matter is opened before the Court upon the motion of plaintiff New Jersey Payphone Association, Inc. for summary judgment and the cross-motion of defendant the Town of West New York, also for summary judgment. The motion and cross-motion have been decided upon the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, plaintiff's motion will be granted and defendant's cross-motion will be denied. Summary judgement will be entered for plaintiff in this matter and the Town of West New York will be enjoined from enforcement of its ordinance that is the subject of this litigation.

## BACKGROUND

This lawsuit concerns Ordinance $^{26}/_{99}$ (the "Ordinance") adopted on February 16, 2000 by the Town of West New York (the "Town") regarding pay telephones in public rights of way. Plaintiff New Jersey Payphone Association (the "Payphone Association") is a not-for-profit association whose members maintain pay telephones in West New York. The Payphone Associa-

tion challenges the Ordinance on a number of grounds, alleging that it violates the Unites States and New Jersey Constitutions, New Jersey statutory law, and that the ordinance is preempted by the express provisions of the Federal Telecommunications Act of 1996.

The Payphone Association moved before this Court for a preliminary injunction. This motion was denied in the Court's Letter Opinion and Order of June 7, 2000, on the ground that plaintiff failed to establish that waiting for a plenary adjudication would cause its members to suffer an irreparable injury. The merits of the arguments were not reached. Now, both parties move before this Court for summary judgment on the complaint.

Citing the need to control the placement of pay telephones for the benefit of pedestrian and vehicular traffic in the public rights of way, the Ordinance requires prospective pay telephone operators to obtain a permit for each pay telephone specifying that pay telephone's exact location. Section three of the Ordinance continues:

> The Town reserves the right to award a Contract for replacement or operation of [pay telephones] in the public right-of-way of the Town and on Town owned property. If the Town exercises such rights no other permits or renewals for the operation of [pay telephones] shall be issued and any previously installed [pay telephones] shall be removed from the public right-of-way within thirty days.

Pursuant to this paragraph of the Ordinance, the Town promulgated a document titled "Franchise for Public Pay Telephones throughout the Town of West New York." This document invited bids for the contract to provide pay telephones. Included are substantive specifications for proposals. The document as a whole will be referred to hereinafter as the "Franchise Specification."

The Franchise Specification provides that the Town is to be compensated based

upon a percentage of revenue generated by the pay telephones. West New York is to be split into two districts with contracts granted to the two successful bidders. At least 75 pay telephones must be installed by the winning bidder at locations to be approved by a Town official. A security deposit of $250 per proposed telephone must be paid to qualify to bid. This would amount to a payment of at least $18,750 assuming the bidder proposes to install the minimum of 75 telephones.

The Town is to evaluate the bids based upon a number of factors, including: the experience of the applicant, the ability of the applicant to maintain the pay telephones, the efficiency of the public service to be provided, the willingness of the applicant to provide pay telephones in residential neighborhoods that lack private telephones, the applicant's history of maintaining pay telephones in West New York, and the cost of a call to the public. Also considered is the compensation offered the Town by the applicant. Ronald Theobald, Purchasing Agent for the Town, testified by affidavit that he considered compensation to the Town to be the most important factor in evaluating the bids. .

As it happened, three companies submitted proposals. Theobald testifies that the applications were equivalent with the exception of the compensation offered and the per-call cost to the public. Theobald determined that differences in billing methods between the bidding companies created difficulties in evaluating the bids. Accordingly, he recommended that all the bids be rejected. Due to the pendency of this action, the parties have agreed that no further action will be taken with regard to awarding the contract or otherwise putting into effect the Town's Ordinance.

In response to inquiries by the Court, the parties have clarified their positions in one important respect. The Town's Ordinance and Franchise Specification are contradictory in that the Ordinance expressly states that it applies to both public property and public rights of way. However, the Franchise Specification states it covers pay telephones on public property only. While the merits of this distinction are discussed *infra*, it suffices here to note that the Payphone Association only challenges the Ordinance to the extent it regulates pay telephones in public rights of way. The Payphone Association expressly disavows any challenge to the Town's ability to control whose pay telephones are installed in what is unequivocally Town property, such as the foyer of City Hall, or in a fire station.

The Town rejects the notion that any valid distinction exists. The Town argues that it owns the public rights of way as well as its own buildings and grounds. By extension, therefore, the Town claims the authority to contract for the installation of pay telephones essentially any place that is not private property. Specifically, this would include the right to grant a franchise to install pay telephones on the Town's sidewalks or on the sides of buildings abutting public rights of way.

The parties do agree, however, that the Ordinance and the Franchise Specification are intended to cover both rights of way and Town buildings, grounds and other property, notwithstanding the ambiguity in their language. The Court requested supplemental submissions on the parties' positions on this issue and has carefully considered the parties' arguments.

## DISCUSSION

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir.1986). This Court noted in its opinion denying Payphone Association's application for a preliminary injunction that the issues presented by this case are primarily legal.

*See also NE Hub Partners, L.P. v. CNG Transmission Corp.,* 239 F.3d 333, 344, (3d Cir.2001) (factual issues obviated by presence of preemption issue).

## 1. The Preemption Issue

The moving papers argue several alternative grounds for decision. Most prominently, plaintiff argues that the Ordinance is preempted by the *Telecommunications Act of 1996,* Pub.L. No. 104–104, 110 Stat. 56, codified in relevant part at 47 U.S.C. § 253. Plaintiff also contends that the Ordinance violates the substantive due process rights of the United States and New Jersey Constitutions, and constitutes a taking of private property without compensation in violation of the Fifth Amendment of the United States Constitution. Finally, according to plaintiff, the Ordinance creates a "fee, assessment or levy" contrary to New Jersey statute N.J.S.A. 54:30A–124.

"Longstanding practice calls for federal judges to explore all non-constitutional grounds of decision before addressing constitutional ones...." *United States v. Serafini,* 167 F.3d 812, 815 (3d Cir.1999). Likewise, the federal courts do not resolve difficult or important matters of state law where it is not necessary to do so. *See, e.g.,* 28 U.S.C. § 1367(c)(1) (court may decline to exercise supplemental jurisdiction over novel or complex issues of state law); *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 27–28, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959) (federal courts to stay proceedings involving state law issues regarding city and state relations); *Planned Parenthood of Central New Jersey v. Farmer,* 220 F.3d 127, 149 (3d Cir. 2000) (avoidance of "needless friction" with important state policies one prong of *Pullman* abstention doctrine). The Court should not be understood to decline jurisdiction or to abstain from considering the state constitutional and statutory issues raised by the parties. However, where a matter may be decided by a straightforward application of a federal statute, the

Court believes that this is the preferable course for a federal court to take.

The Court notes that the Fourth Circuit vacated a decision by the District of Maryland in a similar case, on the ground that preemption under the Telecommunications Act was itself a constitutional issue and that certain state-law issues should have been reached first. The Court respectfully disagrees with this approach, however.

Our own Third Circuit has written, "the basic question involved in [preemption claims under the Supremacy Clause] is never one of interpretation of the Federal Constitution but inevitably one of comparing two statutes." *United Services Auto. Ass'n v. Muir,* 792 F.2d 356, 363 (3d Cir. 1986) (quoting *Swift & Co. v. Wickham,* 382 U.S. 111, 120, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965)) (alteration in original), *cert. denied sub nom., Grode v. United Services Auto Ass'n,* 479 U.S. 1031, 107 S.Ct. 875, 93 L.Ed.2d 830 (1987). This is particularly true where preemption is of the express, statutory variety, as opposed to either the doctrines of field or conflict preemption. Such preemption is pursuant to an explicit statutory command that state law be displaced. *Orson, Inc. v. Miramax Film Corp.,* 189 F.3d 377, 381 (3d Cir.1999), *cert. denied,* 529 U.S. 1012, 120 S.Ct. 1286, 146 L.Ed.2d 232 (2000). The inquiry is one of statutory intent. *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 383, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992).

Preemption of state law pursuant to an express provision of a federal statute is only a constitutional issue in the sense that the authority for such preemption rests in part upon the Supremacy Clause of the United State Constitution. Every federal statute must be bottomed upon a grant of power in the federal Constitution; this does not convert every federal statutory question into a constitutional one. *See Hotel Employees & Restaurant Employees Int'l Union v. Nevada Gaming Comm'n,* 984 F.2d 1507, 1512 (9th Cir. 1993) (Pullman abstention not appropriate "because preemption is not a constitutional

issue"); *United Services Auto. Ass'n,* 792 F.2d at 363 (preemption not the type of constitutional issue to be avoided under *Pullman* abstention doctrine). Here there is no dispute over Congress' power to legislate in the field of telecommunications, nor over whether federal law trumps an ordinance of the Town of West New York. The constitutional aspects of the interrelation between the Telecommunications Act and the Ordinance are not truly "issues" in this case at all. The only issue here is the statutory one of whether the Town's actions contravene a federal law.

Therefore, the Court will address first the arguments of plaintiffs that the Ordinance is preempted by the federal Telecommunications Act. Because the Court finds below that preemption does exist and that the Ordinance and the Franchise Specification are void on that ground, the Court will reach neither the constitutional nor state law grounds raised by plaintiff.

**2. Ripeness**

■ The Town argues that the Payphone Association's challenge is not ripe for judicial review. The Town makes this argument solely with reference to the Payphone Association's state law challenge to the Ordinance under N.J.S.A. 54:30A–124. Although the Court does not reach this substantive ground in this Opinion, in an excess of caution and to settle any uncertainty regarding the justiciability of this matter, the Court will briefly address the federal doctrine of ripeness. It is plain that all of the substantive issues raised in this matter, whether actually reached by the Court or not, are ripe for review in this Court.

The Third Circuit addressed the ripeness doctrine in *Philadelphia Federation of Teachers v. Ridge,* 150 F.3d 319, 322–23 (3d Cir.1998). The doctrine prevents the federal courts from entanglement in abstract disputes. *Id.* (quoting *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), *overruled on other grounds, Califano v. Sand-*

*ers,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977)). Two factors comprise the analysis: whether the issues are fit for judicial resolution and whether the parties will suffer hardship if a decision is withheld. *Id.; see also Step–Saver Data Sys., Inc. v. Wyse Technology,* 912 F.2d 643 (3d Cir.1990) (using a three-part test, weighing: (1) the adversity of the parties' interests; (2) the conclusiveness of the judgment; and (3) the utility of the judgment).

In *Philadelphia Federation of Teachers,* the Court of Appeals wrote that the "fitness for judicial review" prong of its ripeness test depended upon whether the issues presented were primarily legal or contingent on hypothetical facts, and whether the decision would decisively resolve the controversy at hand. 150 F.3d at 323. The Court has already noted the legal character of the issues at bar. Plainly a ruling for the Payphone Association would be conclusive with respect to the Ordinance and its effect upon plaintiff.

The hardship to the parties, or whether a lack of decision would create "a 'direct and immediate' dilemma for the parties," *id.,* is clear here. Absent a ruling, the Town and the Payphone Association will remain at loggerheads and the Town will be forced to decide whether to withdraw or to proceed with its franchise scheme at the risk of offending federal law. It matters not that no contract has actually been signed; indeed, the parties have represented to the Court that the Town has delayed its bidding process pending the decision by this Court. Therefore, both prongs of the ripeness test having been met. The Town's argument that the case is not yet justiciable must be rejected.

**3. The Federal Telecommunications Act**

Section 253 of Title 47 of the United States Code provides:

(a) *In general*

No State or local statute or regulation, or other State or local legal require-

ment, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.

(b) *State regulatory authority*

Nothing in this section shall affect the ability of a State to impose, on a competitively neutral basis and consistent with section 254 of this section, requirements necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers.

(c) *State and local government authority*

Nothing in this section affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government.

Subsection (a) is the operative subsection of the statute, expressly preempting any state or local law inconsistent with its prohibition. Subsections (b) and (c) are savings clauses, excepting the listed local and state functions from the preemptive effect of subsection (a). *See Cablevision of Boston, Inc. v. Public Improvement Comm'n,* 184 F.3d 88, 98 (1st Cir.1999). Once the party seeking preemption sustains its burden to show that a local municipality has violated § 253(a) by prohibiting or effectively prohibiting entry into the payphone market, the burden of proving that a statute or regulation comes within the safe harbor in § 253(c) falls on the party claiming that the safe harbor applies—in this case, the Town. *See In re PETITION OF THE STATE OF MINNESOTA,* 14 F.C.C.R. 21,697, n. 26, 1999 WL 1244016, n. 26 (F.C.C.1999) (citing *In re the Public Utility Commission of Texas,* 13 F.C.C.R. 3460, ¶ 83 (F.C.C. 1997)).

■ The parties do not address whether the Telecommunications Act provides a private right of action by telecommunications providers against a municipal violation of section 253. Substantial authority and the legislative history holds that there is such a private right of action. *TCG Detroit v. City of Dearborn,* 206 F.3d 618 (6th Cir.2000) (section 253(c) provides private right of action) (quoting 141 Cong. Rec. S 8213 (June 13, 1995)); *see Cablevision,* 184 F.3d at 100 n. 9 (assuming without deciding that private right of action exists). Under section 253(d), The FCC is granted powers of policing violations of 253(a) and (b). Like the several courts that have addressed the issue previously, this Court finds that omitting section 253(c) from the FCC's jurisdiction suggests that Congress intended that 253(c) be enforceable through private litigation. For this reason, and for the reasons more fully discussed in the authorities cited immediately above, the Court finds that the Payphone Association properly has brought this action to enforce section 253(c).

■ There can be little argument that an exclusive franchise as contemplated by the Section Three of the Town's Ordinance would constitute a "barrier to entry" prohibited under section 253(a). It is well-recognized that the Telecommunications Act marked a sea change in the regulation of the telephone industry in which Congress rejected the long-held premise that monopolies were necessary to reliable and universal service. *Cablevision,* 184 F.3d at 97. On its face, the Town's exclusive franchising scheme is at odds with the spirit and letter of the Telecommunications Act.

Indeed, the Town does not argue to the contrary. Instead, the Town relies upon the savings provision of section 253(c) to defend the Ordinance. The Town argues that the Ordinance is necessary "to regulate the physical occupation of the Town's

rights of way ... in the interest of avoiding pedestrian traffic problems."

The Court is unable to see how selling off the exclusive right to provide pay phones to the highest bidder bears any rational relationship to the interest identified by the Town or to any other interest that the Town may legitimately advance pursuant to the savings clause of section 253(c). As the First Circuit wrote in a passage quoted by the Town itself, "[i]f ... a local authority decides to regulate for its own reasons (*e.g.,* to minimize disruption to traffic patterns), § 253(c) would require that it do so in a way that avoids creating unnecessary competitive inequities among telecommunications providers." *Cablevision,* 184 F.3d at 105.

Managing pedestrian traffic patterns does not require an exclusive franchise. An exclusive franchise is plainly incompatible with the proviso of`section 253(c) that such traffic management concerns be on a "competitively neutral" and "nondiscriminatory." The FCC, admittedly in a somewhat different context, has listed appropriate right-of-way management measures. These include regulations regarding location, the physical integrity of the streets, indemnity requirements, controlling the use of underground cable facilities, *et cetera. In re Classic Tel., Inc.,* 11 F.C.C.R. 13,082, ¶ 39, 1996 WL 554531, ¶ 39 (1996) (citing remarks of Sen. Feinstein).

The *Classic Telephone* decision specifically disapproved of municipal measures that simply deny a franchise to one provider while granting it to another under the rubric of right-of-way management pursuant to section 253(c). *Id.* ¶ 40. The Court need not decide how tight a link must exist between a municipal regulation of pay telephones and the purported goal of preserving the public rights-of-way. *Cf. TCG New York, Inc. v. City of White Plains,* 125 F.Supp.2d 81, 91 (S.D.N.Y.2000) (regulation not saved from preemption by section 253(c) that did not "directly relate" to management of right-of-way). Here, beyond any reasonable question, the Ordinance's exclusive franchise is unrelated to legitimate traffic or right-of-way management powers of the Town.

The Town asks the Court to imagine a parade of horribles if its Ordinance is struck down: the Town will be forced to permit an unlimited number of payphones in a popular location, and the Town will be powerless to prevent payphones in dangerous locations. These problems are plainly unrelated to the selling of an exclusive franchise, however. A permitting procedure that requires approval of a proposed pay telephone sites is an obvious solution to the Town's stated concerns. It is not for the Court to devise or to dictate traffic management regulations for the Town. However, the ease with which one can imagine alternatives to effectuate the Town's claimed traffic management goal undercuts the Town's claim that the exclusive franchise scheme will serve that purpose. *See IN RE MINNESOTA,* 14 F.C.C.R. 21, 697, ¶ 60, 1999 WL 1244016, ¶ 60 ("Minnesota has decided not to use a permit process similar in effect for other state rights-of-way and instead has granted exclusive physical access to a single entity in return for valuable consideration.")

Purchasing Agent Theobald's candid admission that the amount of compensation to the Town was the primary criterion in selecting the winning bid further undermines the Town's claim that the Ordinance and the Franchise Specification were an exercise of its traffic management powers. Nor does the Town's emphasis on the highest bidder bear any relation to the "fair and reasonable compensation" for the use of the public right-of-way that section 253(c) permits municipalities to exact.

Some courts have found that the fairness and reasonableness of a franchise fee under section 253(c) depends upon a rough proportionality between the fee and the extent of the use of the public right-of-way, fees other providers have been willing to pay, and the negotiating history of the

638

parties. *TCG Detroit,* 206 F.3d at 625; *see also TCG New York,* 125 F.Supp.2d at 96. Others, more persuasively in this Court's view, read "fair and reasonable compensation" to limit municipalities to recoupment of costs directly incurred through the use of the public right-of-way. *Bell Atlantic–Maryland, Inc. v. Prince George's County,* 49 F.Supp.2d 805, 817 (D.Md.1999), *vacated on other grounds,* 212 F.3d 863 (4th Cir.2000); *Peco Energy Co. v. Township of Haverford,* 1999 WL 1240941, *7 (E.D.Pa. 1999). Indeed, some courts have held that a revenue-based franchise fee can never be sufficiently connected to compensation for use of the right-of-way to pass muster under 253(c). *Prince George's County,* 49 F.Supp.2d at 818; *Peco Energy Co.,* 1999 WL 1240941 at *8; *AT & T Communications of Southwest, Inc. v. City of Dallas,* 8 F.Supp.2d 582, 593 (N.D.Tex.1998). Plainly, a fee that does more than make a municipality whole is not compensatory in the literal sense, and risks becoming an economic barrier to entry.

The Court need not choose between these competing views of "fair and reasonable compensation" in this case, because a highest bidder arrangement based on commissions generated by an exclusive franchise for all of the payphones in the Town has no logical link at all to costs nor to any other measure of what might be deemed "fair and reasonable." Indeed, such an arrangement clearly constitutes a barrier to entry for smaller payphone providers, even apart from the exclusivity of the franchise.

Moreover, the price exacted by the municipality will contain an increment reflecting the value of the franchise's exclusivity. The bids are for the right to exclude all others, not merely for compensation to the Town for the use of the right-of-way. This increment of value is as unrelated to compensation for use of the right-of-way as it is antithetical to the overarching, pro-competitive purpose of the statute. *See IN RE MINNESOTA,* 14 F.C.C.R. 21697, ¶ 62, 1999 WL 1244016, ¶ 62. Therefore,

that the Town found willing bidders does not weigh in favor of the reasonableness of the compensation scheme, and those bids are no guide to what is "fair and reasonable" under the statute.

The Town argues strenuously that it has the right to charge a fee for use of the public right-of-way because the right-of-way is Town property. The Town misunderstands the nature of its ownership interest in the public streets and sidewalks. The ownership interest in the land under the public streets resides in the adjacent land owner. The public has an easement for streets, utilities and sidewalks, leaving the landowner only the naked fee in the land. *Bechefsky v. City of Newark,* 59 N.J.Super. 487, 492, 158 A.2d 214 (1960) (citing *Saco v. Hall,* 1 N.J. 377, 382, 63 A.2d 887 (1949)). The local government holds the easement in trust for the public. *State v. South Hackensack Tp.,* 65 N.J. 377, 383, 322 A.2d 818 (1974).

Thus, the control the municipality exerts over the easement is a function of its powers as trustee, conventionally expressed as the police power to manage the public right-of-way. *See also Bechefsky,* 59 N.J.Super. at 492, 158 A.2d 214 ("sovereign power over land lying within street lines is lodged in the municipality"). Distinct from public parks or government buildings, the municipality does not possess ownership rights as a proprietor of the streets and sidewalks. Consequently, the Town's analogies and hypotheticals likening the effect of the Ordinance to the Town's management of public parks and buildings are inapt. Likewise, the Town's citation of various state-law authorities supporting its right-of-way management powers simply beg the question, because these authorities are only controlling to the extent they are not preempted by federal law.

Having considered the Ordinance's key elements of exclusiveness and compensation, the Court turns to the other criteria of the Franchise Specification to determine whether they also are repugnant to the

Telecommunications Act. As set forth above, these criteria are: the experience of the applicant; the ability of the applicant to maintain the pay telephones; the efficiency of the public service to be provided; the willingness of the applicant to provide pay telephones in residential neighborhoods that lack private telephones; the applicant's history of maintaining pay telephones in West New York; and the cost of a call to the public.

Section 253(b) permits States to regulate pay telephone service for the benefit of the public safety, to promote universal service and to "safeguard the rights of consumers." This power is not, however, extended to municipalities. The Town does not cite section 253(b), and makes no claim that the State of New Jersey has delegated its regulatory powers (to the extent they are saved from preemption by section 253(b)) to the Town. Therefore, the remaining criteria for granting a pay phone concession must rest upon the right-of-way management powers saved by section 253(c).[1]

It is clear that several of the listed criteria cannot be plausibly linked to right-of-way management issues. Controlling the cost of a telephone call, for example, has no connection to traffic management. The Court notes the factual claims made by the Town that pay telephones in high crime areas have been a public nuisance. The Town also complains that lack of control over pay telephone placement has made it difficult to compel the removal of non-functioning or undesirable pay telephones because their owners cannot be identified. Reading between the lines, the

Court is willing to perceive a possible connection to right-of-way management by better ascertaining the identity and responsibility of pay telephone providers. Also, as previously noted, neutrally administered controls over the location of pay telephones might well be justified as right-of-way management.

The criteria as presently stated in the Ordinance must fail, however. First, such requirements as "experience" and "ability to maintain" may all to readily be applied as barriers to entry. Indeed, the clear bias inherent in such requirements in favor of larger, established pay telephone providers clearly would thwart the intent of the Telecommunications Act to displace entrenched telecommunications monopolies with an openly competitive market. The Town's own citation of the FCC's findings that the pay telephone market is easy and cheap to enter establishes that undue reliance on experience in granting pay telephone permits will easily run afoul of the section 253(a)'s ban on barriers to entry. See Town's Brief at 14 (citing In re Implementation of the Pay Telephone Reclassification and Compensation Provisions of the Telecommunications Act of 1996, 11 F.C.C.R. 20,541, ¶ 11, 1996 WL 547458, ¶ 11 (F.C.C.1996)).

Moreover, it is clear that any ordinance containing such criteria must be crafted to prevent Town officials from granting or denying pay telephone applications at their unguided discretion. As several courts have held, the power to deny permission to install a pay telephone on right-of-way management grounds must be exercised pursuant to regulations tied specifically

---

1. The Town cited authorities regarding municipal powers over public streets, e.g., N.J.S.A. 48:7–2, N.J.S.A. 40:60–60.25.29, in its supplemental letter brief in support of its claim to rights as a proprietor of the public right-of-way. The Town has not argued that these statutes amount to a state delegation of state powers saved from preemption under section 253(b). Cf. BellSouth Telecommunications, Inc. v. City of Orangeburg, 337 S.C. 35, 522 S.E.2d 804, 807 (1999) (state statute permitting municipality to enact ordinances for, inter alia, "health, peace order and good government" was delegation of power saved from preemption by section 253(b)). The Payphone Association has not, therefore, responded to this possibility and the Court will not directly rule upon it. On the record as it presently stands, however, the Court notes that the flaws in the Ordinance that place it outside the savings clause of 253(c) would likely render it outside the protections of section 253(b) as well.

and clearly to traffic and right of way management concerns. *TCG New York*, 125 F.Supp.2d at 92 (ordinance preempted "because it leaves the City near total discretion to approve or reject an application"); *Prince George's County*, 49 F.Supp.2d at 816; *Peco Energy*, 1999 WL 1240941, * 6; *City of Dallas*, 8 F.Supp.2d at 593. Unfettered discretion to deny a permit or a denial pursuant to such vague standards as the "public interest" is void as a barrier to entry. *TCG New York*, 125 F.Supp.2d at 92.

Therefore, while the Court will concede that some of the secondary criteria along the lines set forth in the Ordinance might, if substantially modified, be validly adopted, these secondary criteria are also invalid as right-of-way management measures as presently drafted. Of course, as already discussed, the Court is fully satisfied that the Ordinance's principle features, the exclusive franchise awarded to the highest bidder, is not permissible under section 253(c). Thus, Section Three of the Ordinance and the Franchise Specification are preempted by the federal Telecommunications Act, 47 U.S.C. § 253, and are void.

One final issue remains. The Ordinance provides that if any part is found to be invalid, then the rest of the Ordinance will continue in effect. Although, absent Section Three, the Ordinance does not provide for an exclusive franchise, Section Two of the Ordinance still requires a permit for the placement of a pay telephone in West New York specifying the exact location of the equipment.

It is not clear what, if any, criteria govern the grant or denial of a pay telephone permit under Section Two. The statement of "Intent and Purpose" in Section One of the Ordinance speaks of aesthetics and the "perception of disorder" as well as pedestrian traffic management. If this statement is to provide the guidelines for awarding pay telephone permits, then one must ask whether the Court's discussion above regarding clear guidelines and the

necessity to contain municipal discretion would provide grounds to challenge a denial of a permit under Section Two as well.

The parties have not discussed this question and it is not properly before the Court. The Town may wish to make sure that the enforcement of the remaining, non-preempted portions of the Ordinance, and any modified pay telephone ordinance it may adopt in the future, are consistent with the principles discussed in this Opinion.

### 4. Permanent Injunction

■ It has been held in this District that the standard for an award of a permanent injunction is identical to that for the award of a preliminary injunction, except that actual success on the merits must be shown, rather than a mere likelihood. *Harlem Wizards Entertainment Basketball, Inc. v. NBA Properties, Inc.*, 952 F.Supp. 1084, 1091 (D.N.J.1997) (Walls, J.). It is clear that the different showing on the merits is an important point of distinction. "In deciding whether a permanent injunction should be issued, the court must determine if the plaintiff has actually succeeded on the merits (i.e. met its burden of proof)." *ACLU v. Black Horse Pike Reg. Bd. of Educ.*, 84 F.3d 1471, 1477 n. 3 (3d Cir.1996).

This Court's decision to grant summary judgment stands as its plenary decision on the merits, and thus plaintiffs have established actual success in this matter. It is not so clear that another critical element of the preliminary injunction showing, irreparable injury, also applies to permanent injunctions. The Court of Appeals noted a conflict in the case law on this issue in *Temple Univ. v. White*, 941 F.2d 201, 213 (3d Cir.1991), *cert. denied sub nom., Snider v. Temple Univ.*, 502 U.S. 1032, 112 S.Ct. 873, 116 L.Ed.2d 778, (1992), but declined to resolve it. Since then, the Third Circuit has not spoken on whether irreparable injury is necessary for a permanent injunction.

Of course, were a legal remedy available, the Court would not issue an injunction in equity. Moreover, the Supreme Court has long held that "[t]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 506–07, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). Other panels of the Third Circuit, prior to *Temple University,* treated irreparable injury as a necessary part of the analysis of a request for permanent injunctive relief. *See, e.g., Natural Resources Defense Council, Inc. v. Texaco Refining & Marketing, Inc.,* 906 F.2d 934, 936 (3d Cir. 1990). Finally, the Court must consider the traditional equitable issue of the balance of the harms to be borne if the Court grants or denies an injunction. *See Prudential Ins. Co. of Am. v. Massaro,* 2000 WL 1176541, *17 (D.N.J.2000) (noting precedent treating irreparable injury requirement as implicit in equitable analysis).

Presumably the motive behind operating pay telephones is to earn a profit. It might be argued, therefore, that the harm to the Payphone Association's members if they are excluded from the Town's pay telephone market is remediable through money damages. However, plaintiff's members have a federal statutory right to participate in a local payphone market free from municipally-imposed barriers to entry. This right cannot be directly vindicated by a money judgment after the fact.

The public interest and the balance of the harms clearly weigh in favor of an injunction. Congress has stated that the public interest requires a competitive pay telephone market. The only "harm" imposed upon the Town by the Court's ruling today is that it may not exclude or regulate local pay telephones in a manner unrelated to the Town's right-of-way management concerns. Such harm is not legally cognizable, because under federal law the Town has no right to exercise this power. The harm to the plaintiff and its constituent pay telephone operators has been discussed. The threatened harm is "irreparable" for the purposes of the permanent injunction analysis.

Each of the factors weighing in favor of the plaintiffs' application, the Court will grant a permanent injunction barring further enforcement of the Town's Ordinance.

## CONCLUSION

For the foregoing reasons, the Court will grant plaintiff's motion for summary judgment and deny defendant's cross-motion for summary judgment. The Order of Judgment will declare that Section 3 of the Ordinance and the Franchise Specification promulgated pursuant to Section 3 of the Ordinance are preempted by the Telecommunications Act, 47 U.S.C. § 253(a) and not saved from preemption by 47 U.S.C. § 253(c). The Court will permanently enjoin the Town from enforcing Section Three of the Ordinance and the Franchise Specification, including without limitation an injunction against awarding any exclusive franchise for providing pay telephone service in the Town based upon the amount of compensation paid to the Town by that provider.

An appropriate Order is attached.

## ORDER OF JUDGMENT AND PERMANENT INJUNCTION

For the reasons set forth in the Court's Opinion filed herewith,

It is this 7th day of March, 2001

ORDERED that the plaintiff's motion for summary judgment is granted, and it is further

ORDERED that the defendant's cross-motion for summary judgment is denied, and it is further

ORDERED and ADJUDGED as the declaration of this Court that Section Three of Ordinance 26/99 (the "Ordinance") of the Town of West New York, and the document titled Franchise for Public Pay Telephones throughout the Town of West New York (the "Franchise Specification")

promulgated pursuant to the Ordinance is preempted and is void and of no effect, pursuant to 47 U.S.C. § 253, and it is further

ORDERED that the Town of West New York is hereby permanently enjoined from enforcing or putting into effect Section Three of the Ordinance and/or the Franchise Specification, including without limitation making any award of an exclusive franchise for providing pay telephone service in the Town based upon the amount of compensation paid.