

1998 Decisions

Opinions of the United States Court of Appeals for the Third Circuit

7-30-1998

# Phila Federation v. Ridge

Precedential or Non-Precedential:

Docket 97-1553,97-1589

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Phila Federation v. Ridge" (1998). *1998 Decisions.* Paper 176.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/176

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 30, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NOS. 97-1553 and 97-1589

PHILADELPHIA FEDERATION OF TEACHERS, AMERICAN
FEDERATION OF TEACHERS, LOCAL 3, AFL-CIO; LOCAL
22, INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS,
AFL-CIO; DISTRICT COUNCIL 47, AMERICAN
FEDERATION OF STATE, COUNTY AND MUNICIPAL
EMPLOYEES, AFL-CIO,

      Appellants No. 97-1553

v.

THOMAS J. RIDGE, in his official capacity as the
Governor of the Commonwealth of Pennsylvania; JOHNNY
BUTLER, in his official capacity as Secretary of Labor and
Industry of the Commonwealth of Pennsylvania; RICHARD
A. HIMLER, in his official capacity as Director of the
Bureau of Workers' Compensation

PHILADELPHIA FEDERATION OF TEACHERS, AMERICAN
FEDERATION OF TEACHERS, LOCAL 3, AFL-CIO; LOCAL
22, INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS,
AFL-CIO; DISTRICT COUNCIL 47, AMERICAN
FEDERATION OF STATE, COUNTY AND MUNICIPAL
EMPLOYEES, AFL-CIO

v.

THOMAS J. RIDGE, in his official capacity as the
Governor of the Commonwealth of Pennsylvania; JOHNNY
BUTLER, in his official capacity as Secretary of Labor and
Industry of the Commonwealth of Pennsylvania; RICHARD
A. HIMLER, in his official capacity as Director of the
Bureau of Workers' Compensation

Thomas J. Ridge, Governor of the Commonwealth
of Pennsylvania; Johnny J. Butler, Secretary of
Labor and Industry of the Commonwealth of
Pennsylvania; and Richard A. Himler, Director of
the Bureau of Workers' Compensation of the
Commonwealth of Pennsylvania,

Appellants No. 97-1589

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civil No. 96-cv-008051)

Argued: March 20, 1998

Before: BECKER, Chief Judge, RENDELL and
HEANEY,* Circuit Judges

(Filed July 30, 1998)

Deborah R. Willig
Ralph J. Teti
Catherine M. Reisman (Argued)
Willig, Williamson & Davidson
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103

Attorneys for Appellants/
Cross-Appellees

Paul F. Tufano
Roger E. Grimaldi (Argued)
Anthony S. Potter
Office of General Counsel
333 Market Street, 17th Floor
Harrisburg, PA 17101-2210

Attorneys for Appellees/
Cross-Appellants

_____

*Honorable Gerald W. Heaney, United States Circuit Judge for the
Eighth Circuit, sitting by designation.

OPINION OF THE COURT

BECKER, Chief Judge

On June 24, 1996, Pennsylvania Governor Tom Ridge signed into law the Act of June 24, 1996, P.L. 350, No. 57 ("Act 57"), which substantially reformed Pennsylvania's system of workers' compensation. On December 4, 1996, the plaintiffs, three unincorporated labor organizations –– the Philadelphia Federation of Teachers, Local 3, AFL–CIO; Local 22 of the International Association of Firefighters, AFL–CIO; and District Council 47 of the American Federation of State, County, and Municipal Employees, AFL–CIO (collectively "plaintiffs") –– filed this action against the Governor; Johnny J. Butler, Secretary of Labor and Industry; and Richard A. Himler, Director of the Bureau of Workers' Compensation, in their official capacities, seeking a declaration that Sections 204(a) and 306(a.2) of the Pennsylvania Worker's Compensation Act, Act of June 2, 1915, P.L. 736 ("WCA"), as amended by Act 57, violate the United States and Pennsylvania constitutions. The plaintiffs also sought an injunction permanently enjoining the defendants from enforcing these sections. They rely upon 42 U.S.C. S 1983.

The defendants moved to dismiss plaintiffs' complaint for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), and for failure to state a claim upon which relief could be granted, Fed. R. Civ. P. 12(b)(6). With regard to their Rule 12(b)(1) motion, the defendants argued that the district court lacked jurisdiction because: (1) the matter is not ripe for judicial review; (2) plaintiffs lack standing to pursue their claims; and (3) plaintiffs' claims are barred by the Eleventh Amendment of the United States Constitution. The district court granted the Motion to Dismiss, basing its holding on the conclusion that plaintiffs' claims were not ripe and, therefore, did not present a justiciable controversy. The court rejected defendants' argument that plaintiffs' complaint is barred by the Eleventh Amendment, and declined to address whether plaintiffs had standing or whether they had stated proper claims for relief.

Plaintiffs filed a timely appeal, contending that the district court erred in holding that their claims were not ripe. Defendants cross-appealed, seeking review of the district court's refusal to dismiss plaintiffs' complaint based upon the Eleventh Amendment's jurisdictional bar. We have jurisdiction under 28 U.S.C. S 1291 and exercise plenary review over the district court's order dismissing plaintiffs' complaint for lack of subject matter jurisdiction. See Armstrong World Indus., Inc. v. Adams, 961 F.2d 405, 410 (3d Cir. 1992). We affirm on the ground that the dispute is not justiciable because plaintiffs have failed to demonstrate a controversy ripe for resolution by the federal courts. We therefore decline to reach the issues raised by the cross-appeal.

I. THE CHALLENGED PROVISIONS

A. The Impairment Rating (Procedural Due Process Claim)

Section 4 of Act 57 amended Section 306 of the WCA to add section 306(a.2), 77 P.S. S 511.2 (West Supp. 1997), permitting employers to require an employee to submit to an impairment rating evaluation after the employee receives total disability benefits for 104 weeks. See 77 P.S. S 511.2(1). Pursuant to section 511.2, an impairment rating evaluation is performed by a licensed physician chosen by the parties or appointed by the Department of Labor and Industry (the "Department"). See id. The purpose of the evaluation is to determine the level of the employee's impairment rating. If the employee's impairment rating is fifty percent or greater under the American Medical Association's Guide to the Evaluation of Permanent Impairment, he or she remains classified as "totally disabled." See S 511.2(2). If, however, the examination results in an impairment rating that is less thanfifty percent, the employee is reclassified as "partially disabled." See id.

The change in status from "totally disabled" to "partially disabled" does not automatically affect the amount of compensation that the insurer must pay the employee. Rather, the Act provides that "[u]nless otherwise adjudicated or agreed to based upon a determination of

4

earning power under [S 512(2)], the amount of compensation shall not be affected as a result of the change in disability status and shall remain the same." See S 511.2(3). The change in status does, however, affect the length of time that a claimant may receive workers' compensation benefits. An employee who is classified as "totally disabled" is entitled to collect benefits for as long as he or she remains classified as such. An employee with a partial disability, however, is eligible to receive benefits only for a period of 500 weeks, or approximately ten years. See S 511.2(7).

Before changing an employee's disability status, an employer must provide the employee with sixty days notice that his or her impairment rating evaluation showed that the employee was less than fifty percent impaired. See S 511.2(2). The Act also provides that "[a]n employee may appeal the change to partial disability at any time during the five hundred-week period of disability; Provided, That there is a determination that the employee meets the threshold impairment rating that is equal to or greater than fifty percentum impairment . . .." S 511.2(4).

Plaintiffs seek a declaration that, on its face, WCA S 306(a.2), 77 P.S. S 511.2, violates the due process clauses of the United States and Pennsylvania constitutions, U.S. Const. amend. XIV; Pa. Const., art. 1, S 1. Although the Act provides employees whose status is changed to partially disabled the right to appeal their change in status, see 77 P.S. S 511.2(4), plaintiffs maintain that the procedures that will ultimately be employed by the Department during this "appeal process" will deprive their members of the right to procedural due process of law. Plaintiffs rest this claim on the fact that the term "appeal" is not defined in the statute and that, typically, an appeal to the Worker's Compensation Board, as opposed to a hearing, does not involve a fact-finding procedure and de novo adjudication. Plaintiffs further allege that the Act is rendered facially unconstitutional by the fact that the appeal process contained in S 511.2(4) is only available following a determination that the employee is equal to or greater than fifty percent impaired. 77 P.S. S 511.2(4). Plaintiffs also seek to enjoin enforcement of the statute.

5

B. The Pension Offset (Contracts Clause Claim)

Section 3 of Act 57 amended Section 204(a) of the WCA to provide that benefits from a pension plan -- to the extent funded by the employer directly liable for the payment of wage replacement compensation received by a claimant-- shall be credited against the amount of the award to the claimant for wage replacement benefits based on injury or occupational disease.1 See 77 P.S. S 71(a) (West Supp. 1997). The plaintiffs contend that the offset for pension benefits violates the contracts clause of both the United States and Pennsylvania constitutions, U.S. Const. art. I, S 10, cl. 1; Pa. Const. art I, S 17, by unilaterally diminishing the contractual pension rights of public sector employees by reducing the value of their pension benefits. Again, plaintiffs seek declaratory relief and an injunction.

II. RIPENESS

"The existence of a case and controversy is a prerequisite to all federal actions, including those for declaratory or injunctive relief." Presbytery of New Jersey of Orthodox Presbyterian Church v. Florio, 40 F.3d 1454, 1462 (3d Cir. 1994). One aspect of justiciability is ripeness which "determines when a proper party may bring an action."2 Travelers Ins. Co. v. Obusek, 72 F.3d 1148, 1154 (3d Cir. 1995) (quoting Armstrong, 961 F.2d at 411). The function of the ripeness doctrine is to prevent federal courts,"through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Abbott Labs v.

_____

1. Prior to the enactment of section 3 of Act 57, the Act allowed employers to offset the amount of workers' compensation benefits payable by the amount of unemployment compensation benefits paid to the claimant. See 77 P.S. S 71 (West 1992). Act 57 continues to allow employers to offset workers' compensation benefits by unemployment benefits, but it also permits employers to offset Social Security benefits,
severance benefits, and pension benefits. See 77 P.S. S 71(a) (West Supp. 1997).

2. As noted above, the district court declined to address defendants' challenge to plaintiffs' standing. We too will not address this question, and assume for the purposes of this discussion that plaintiffs have standing.

Gardner, 387 U.S. 136, 148 (1967), overruled on other grounds, Califano v. Sanders, 430 U.S. 99, 105 (1977).3 Further, "[w]e presume that federal courts lack jurisdiction unless the contrary appears affirmatively from the record." Renne v. Geary, 501 U.S. 312, 316 (1991) (internal quotations marks and citations omitted). It is the plaintiffs' responsibility to clearly allege facts that invoke the court's jurisdiction. See id.

In Abbott Labs, the Supreme Court established a two-part test for determining whether a prayer for a declaratory judgment is ripe. A court should look to (1) "thefitness of the issues for judicial decision," and (2) "the hardship to the parties of withholding court consideration." 387 U.S. at 149; Texas v. United States, 118 S. Ct. 1257, 1260 (Mar. 31, 1998).4 Under the "fitness for review" inquiry, a court considers whether the issues presented are purely legal, as

_____

3. In this respect, the ripeness doctrine is closely related to the case or controversy requirement of Article III of the United States Constitution. See United States ex rel. Ricketts v. Lightcap, 567 F.2d 1226, 1231 & n.6 (3d Cir. 1977). Just how closely related, however, is not entirely clear. As we have previously noted:

> There is some disagreement among courts and commentators as to whether the ripeness doctrine is grounded in the case or controversy requirement or is better characterized as a prudential limitation on federal jurisdiction. . . . But regardless whether the ripeness doctrine has a prudential component, it seems clear that it is at least partially grounded in the case or controversy requirement.

See Armstrong World Indus., Inc. v. Adams, 961 F.2d 405, 411 n.12 (3d Cir. 1992) (citations omitted).

Thus, while we believe that an argument can be made that plaintiffs' claims do not present the type of case or controversy to which federal courts are limited, we need not pursue this inquiry separately, since it is subsumed within our ripeness analysis.

4. In Step-Saver Data Sys., Inc. v. Wyse Technology, 912 F.2d 643 (3d Cir. 1990), we offered a three-part inquiry as a refinement of the Supreme Court's test. Our inquiry focuses on: (1) the adversity of the parties' interests; (2) the conclusiveness of the judgment; and (3) the utility of the judgment. 912 F.2d at 647. Our refinement simply alters the headings under which various factors are grouped, and since Step-Saver, we have employed both tests. Compare Artway v. Attorney General of N.J., 81 F.3d 1235, 1247 (3d Cir. 1996) (two-part test), and New

Hanover Tp. v. United States, 992 F.2d 470, 472 (3d Cir. 1993) (same) with Armstrong, 961 F.2d at 41 (three-part test), and Travelers Ins., 72 F.3d at 1154 (same). We apply the Supreme Court's two-part test because we find that its framework better accommodates our analysis in this case.

7

opposed to factual, and the degree to which the challenged action is final. The various factors that enter into a court's assessment of fitness include: whether the claim involves uncertain and contingent events that may not occur as anticipated or at all; the extent to which a claim is bound up in the facts; and whether the parties to the action are sufficiently adverse. See Riva v. Massachusetts, 61 F.3d 1003, 1009-10 (1st Cir. 1995).

The second prong focuses on the hardship that may be entailed in denying judicial review, and the determination whether any such hardship is cognizable turns on whether the challenged action creates a "direct and immediate" dilemma for the parties, such that the lack of pre-enforcement review will put the plaintiffs to costly choices. See Abbott Labs., 387 U.S. at 152; W.R. Grace & Co. v. EPA, 959 F.2d 360, 364 (1st Cir. 1992).

A. The Impairment Rating (Procedural Due Proce ss Claim)

Plaintiffs allege that WCA S 304(a.2) is unconstitutional because it does not, on its face, afford their members a meaningful opportunity to be heard regarding the change in their disability status from "totally" to "partially" disabled. Since this change in status will lead directly to the termination of benefits after a 500 week period, plaintiffs allege that, by action of the statute, their members will be deprived of their property (i.e. the compensation benefits) without due process of law.5 The district court concluded

_____

5. As noted above, this assertion rests on plaintiffs' interpretation of the
appeal process provided in section 304(a.2)(4), 77 P.S. S 512.2(4), which they contend does not provide for a de novo hearing reviewing the change in disability status. Plaintiffs' interpretation is undermined by the
regulations promulgated by the Pennsylvania Department of Labor and Industry interpreting Act 57 which became effective on January 17, 1998, after the district court had issued its order. The section of the regulations which implements the appeal provision of section 306(a.2), provides that:

> At any time during the receipt of 500 weeks of partial disability
> compensation, the employe may appeal the adjustment of benefit
> status to a workers' compensation judge by filing a Petition for
> Review.

that review of plaintiffs' claim was premature because, as a result of various contingencies, the court could not be certain that the statute would necessarily operate against any of the unions' members.6

We are inclined to disagree with the district court that there is uncertainty regarding whether the statute will ever operate against any of the plaintiffs' members; rather, we find persuasive plaintiffs' argument that such an eventuality is almost certain. There is, however, a great deal of uncertainty regarding how the statute will operate against plaintiffs' members. It is this uncertainty that renders the claim unfit for judicial review. Plaintiffs ask the

_____

34 Pa. Code S 123.105(f). Under the WCA, an employee filing a petition for review is entitled to a prompt hearing. See 77 P.S. S 710 (West 1992). The workers' compensation judge assigned to the case is charged with holding a full evidentiary hearing, making findings of fact, conclusions of
law, and ultimately determining whether a change in disability status was in accordance with the terms of section 306(a.2). See 77 P.S. S 833, 834 (West 1992 & West Supp. 1997). Further, any party aggrieved by a workers' compensation judge's ruling has a right to appeal to the Workers' Compensation Appeal Board. See 77 P.S. S 853. A party aggrieved by the Appeal Board's decision has a right to appeal to the Commonwealth Court of Pennsylvania, see 42 P.S. S 763, and a party aggrieved by that decision has the right to seek permission to appeal to the Supreme Court of Pennsylvania, see 42 P.S. S 724.

6. The contingencies relied upon by the district were that, in order for plaintiffs' members to be subject to the provisions of Section 306(a.2): (1)
one of the members must suffer a compensable work-related injury after the effective date of Act 57, (2) the same member must be classified as totally disabled, (3) such total disability must continue for a period of 104 weeks and not be changed because of the insurer's successful demonstration of earning power, (4) after the member's receipt of 104 weeks of total disability benefits, the insurer must request that the member submit to an impairment rating evaluation, (5) the evaluation must result in an impairment rating of less than 50% under the American Medical Association's Guides to the Evaluation of Permanent Impairment, (6) the insurer must adjust the disability status of the member from total to partial, and (7) the member must, over a period of 500 weeks, be unable to demonstrate that the impairment is greater than 50%. See Philadelphia Fed. of Teachers v. Ridge, 1997 WL 364397, at * 7 (E.D. Pa. June 20, 1997).

court to declare constitutionally deficient procedures that have yet to be applied. Such a judgment would be premature. Rather, we believe that review of plaintiffs' procedural due process claim must be done in the context of a specific factual setting.

Our conclusion is buttressed by Judge Calabresi's recent decision in Thomas v. City of New York, ___ F.3d ___, 1998 WL 210679 (2d Cir. Apr. 28, 1998). There, the court considered, inter alia, a due process challenge to the procedures set forth in a new local law governing the licensing procedures for livery cab base stations. The court concluded that this claim was not ripe for judicial review since

> None of the plaintiffs has, to date, been denied a license. And, while on the face of [the new law] and its regulations, no proceedings –– either written findings or oral hearings –– are mandated prior to the denial of licenses or of license renewals, we do not know at this time what procedures [the agency] will in fact follow before denying licenses. It follows that a claim that a base station operator has been denied a license renewal without procedural due process is best considered in the context of a specific factual setting.

1998 WL 210679, at * 2; see also Texas v. United States, 118 S. Ct. at 1260 ("Here, as is often true,`[d]etermination of the scope of . . . legislation in advance of its immediate adverse effect in the context of a concrete case involves too remote and abstract an inquiry for the proper exercise of the judicial function.' " (quoting Longshoremen v. Boyd, 347 U.S. 222, 224 (1954)).

We might still review plaintiffs' procedural due process claim despite our conclusion that it is best considered in the context of a specific factual setting if denial of pre-enforcement review would work a significant hardship to the plaintiffs.7 In this case, however, we discern no
_____

7. Whether ripeness requires that both parts of the test be satisfied is a matter of some uncertainty. See Ernst & Young v. Depositors Econ. Protection Corp., 45 F.3d 530, 535 (1st Cir. 1995) ("The relationship between [the] two parts of the test –– fitness and hardship –– has never

10

hardship that will result from withholding review of the constitutionality of WCA S 304(a.2) until a court is able to review the procedures actually employed by the Department. Even assuming that an employee is deprived of his or her due process rights in the future by those procedures, the change in disability status will not affect the level of benefits provided to the employee for five hundred weeks. See 77 P.S. S 512.2 (7). The employee will, therefore, have ample time to challenge the constitutionality of the procedures employed before being deprived of any benefits.

B. The Pension Offset (Contract Clause Claims)

Plaintiffs allege that section 204(a) of the WCA, on its face, violates the contract clauses of both the United States and Pennsylvania constitutions. This claim, which is predominately legal, is arguably fit for review. However, even "the presence of `a purely legal question' is not enough, of itself, to render a case ripe for judicial review, not even as to that issue." Armstrong, 961 F.2d at 421 (quoting Office of Communications of the United Church of Christ v. FCC, 826 F.2d 101, 105 (D.C. Cir. 1987)). Rather, the plaintiffs must still demonstrate that they face a real and immediate threat of injury from the denial of pre-enforcement review of the merits. See id. at 421–22. In the absence of such hardship, the better course is for a federal court to wait until the claim is raised in a specific factual setting since this will almost universally aid in review. As Judge Easterbrook recently opined in a not dissimilar situation: "if anticipatory review is not essential to avoid hardship, then courts should defer review, in order to obtain the benefits of the more focused presentation made possible by a concrete application of the rules." Illinois Council on Long Term Care, Inc. v. Shalala, ___ F.3d ___,

_____

been precisely defined."). The majority view is that both prongs of the test must ordinarily be satisfied in order to establish ripeness, with the caveat that there exists "the possibility that there may be some sort of sliding scale under which, say, a very powerful exhibition of immediate hardship might compensate for questionable fitness. . . or vice versa." See id. (collecting citations). We need not consider the issue here.

11

1998 WL 228063, * 6 (7th Cir. May 8, 1998) (citing Texas v. United States, supra.)

In the instant case, even applying the usual standards for construing the allegations of a complaint which give the plaintiff the benefit of all favorable inferences, plaintiffs have failed to meet their burden of alleging facts sufficient to demonstrate a threat of direct and immediate hardship stemming from the lack of pre-enforcement review. Rather, plaintiffs simply aver, in conclusory terms, that "[a]s a result of the passage of Section 3 of Act 57, the Plaintiffs' members are suffering immediate and/or threatened injury . . . ." (Compl. PP 46, 54). Plaintiffs do not, however, allege any facts that support this legal conclusion by demonstrating the actual and immediate harm they or their members suffer from Section 204(a) of the WCA.

Plaintiffs, in their briefing, do assert a direct and immediate harm to their members. There, plaintiffs contend that section 204(a) creates an uncertainty regarding their members' future income streams since their members cannot be sure that they will receive full pension benefits and full workers' compensation benefits if they have the misfortune of being injured on the job. The argument that this uncertainty constitutes a cognizable harm for purposes of ripeness analysis is based on the Court of Appeals' decision in Riva v. Massachusetts, 61 F.3d 1003 (1st Cir. 1995). Riva involved a claim that the Massachusetts accidental disability retirement scheme violated the Age Discrimination in Employment Act. The challenged portion of the statute provided that disability benefits would be reduced at age sixty-five for retired public employees with less than ten years creditable service who were overfifty-five at the time of their accidental disability retirement. The court found that the statute was ripe for review even though it would not directly affect the plaintiff for several years. The plaintiff, Robert Keenan, had already been declared permanently disabled at the age of fifty-six and had received notice that his benefits would be reduced when he turned age sixty-five by operation of the challenged statute. In applying the Abbott Labs framework, the court found that the hardship prong was satisfied because the uncertainty about the validity of the statute

12

made it impossible for Keenan, then age fifty-eight, "prudently to arrange his fiscal affairs" in anticipation of his retirement years. 61 F.3d at 1012.

We believe that Riva is distinguishable from the instant case. The Riva court had before it a plaintiff who had already been declared permanently disabled and who would be adversely affected by the statute at the time when he turned sixty-five unless the statute was repealed or amended, or unless he died. 61 F.3d at 1010-11. Here, we have no such plaintiff, and thus no one has suffered as "direct and immediate" an injury as Keenan. Moreover, Riva involved much less hardship then was present in Abbott Labs, where the regulation at issue had a "direct effect on the day-to-day business" of the plaintiffs, who were compelled to affix required labeling to their products under threat of criminal sanction. See 387 U.S. at 153. We are not convinced, therefore, that the finding of hardship in Riva is supportable. However, even if it is, the hardship asserted in this case is one step removed even from Riva, and that step is one that we decline to take.

Thus, we conclude that review of the constitutionality of Section 204(a) by a federal court, like review of Section 306(a.2), should be reserved until such time as the court is presented with a concrete factual situation. We note, also, that that day is likely not too far off. As of June 24, 1998, it has been 104 weeks since the effective date of Act 57 and thus presumably some employee has appealed (or soon will appeal) a change in his or her disability status, thus triggering the review process set forth in 77 P.S.S 511.2 and the applicable regulations. We also assume that the pension offset provision has been, or soon will be, utilized.

The order of the district court, dismissing without prejudice plaintiffs' complaint on the ground that it did not present a controversy ripe for resolution, will be affirmed.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

13