**SAVE ARDMORE COALITION, Eni Foo, Peggy Savery, Hugh Gordon, Sharon Eckstein and Richard Gosweiler, Plaintiffs,**

v.

**LOWER MERION TOWNSHIP, Montgomery County Planning Commission, Jennifer Dorn, as Administrator of the Federal Transit Administration, and Southeastern Pennsylvania Transit Authority, Defendants.**

No. 05–1668.

United States District Court, E.D. Pennsylvania.

Nov. 9, 2005.

Robert J. Sugarman, Philadelphia, PA, for Plaintiffs.

John S. Summers, Mark A. Aronchick, Paul W. Kaufman, Hangley, Aronchick, Segal & Pudlin, Philadelphia, PA, John P. Gonzales, Marshall Dennehey Warner Coleman & Goggin, King of Prussia, PA, Amy Lorraine Donohue-Babiak, Gollatz Griffin & Ewing, P.C., Philadelphia, PA, for Defendants.

## MEMORANDUM AND ORDER

SCHILLER, District Judge.

This action arises from a proposed redevelopment project in Ardmore, Pennsylvania, which is located in Lower Merion Township in Montgomery County, Pennsylvania. Plaintiffs, Save Ardmore Coalition, a non-profit corporation organized to address the project, as well as five individuals living within the community whose homes or properties may be affected by the project, bring this lawsuit against Defendants, Lower Merion Township ("LMT"), Montgomery County Planning Commission ("MCPC"), Jennifer Dorn, as Administrator of the Federal Transit Administration ("FTA"), and Southeastern Pennsylvania Transit Authority ("SEPTA"). Plaintiffs challenge Defendants' redevelopment project, which is still in the planning stages. Plaintiffs seek to require Defendants to comply with federally-mandated environmental and historic reviews and to provide procedural protections to Plaintiffs. Defendants assert that the Court lacks subject matter jurisdiction to hear this case, that Plaintiffs' claims are not ripe for review, that Plaintiffs lack standing, and that Plaintiffs have failed to state a claim upon which relief may be granted. Presently before the Court are Defendants' motions to dismiss the Amended Complaint. For the reasons that follow, the Court finds that Plaintiffs' claims are not ripe for review and grants Defendants' motions to dismiss for lack of subject matter jurisdiction.

## I. BACKGROUND

### A. Procedural History

Plaintiffs filed a complaint on April 8, 2005, alleging violations of the National Environmental Policy Act ("NEPA"), the Department of Transportation Act

("DTA"), the National Historic Preservation Act ("NHPA"), the takings clause of the Fifth and Fourteenth Amendments of the U.S. Constitution, and Pennsylvania's Urban Redevelopment Law. (Compl. ¶¶ 18–43.) Defendant LMT filed a motion to dismiss the complaint on June 17, 2005, and the remaining Defendants filed similar motions on June 20, 2005. Plaintiffs filed an opposition to Defendants' motions on July 20, 2005, and subsequently filed an amended complaint on July 21, 2005. The Amended Complaint clarified that the federal statutory claims were brought pursuant to the Administrative Procedures Act ("APA"), and also added a procedural due process claim under the Fifth and Fourteenth Amendments of the U.S. Constitution. (Amend.Compl. ¶¶ 8, 44–48.)

On August 18, 2005, LMT filed a motion to dismiss the Amended Complaint, and the remaining Defendants filed similar motions to dismiss on August 19, 2005. LMT and MCPC seek dismissal under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7), arguing, *inter alia*, that Plaintiffs' claims are not ripe, there has been no final agency action, and no unconstitutional taking or violation of due process has occurred. (LMT Mot. to Dismiss Amend. Compl. at 13–48.) SEPTA seeks dismissal under 12(b)(1) and 12(b)(6), arguing that the Court lacks subject matter jurisdiction and that Plaintiffs have failed to state a claim under federal statutes. (SEPTA Mot. to Dismiss Amend. Compl. at 1–4.) The FTA seeks dismissal under 12(b)(1) and 12(b)(6), arguing that the Court lacks subject matter jurisdiction, the claims are not ripe, no final agency action or major federal action has occurred, and Plaintiffs lack Article III standing. (FTA Mot. to Dismiss Amend. Compl. at 1–11.)

The parties have completed briefing on these issues, and on October 27, 2005, the Court held oral argument.

## B. Factual Background

The following facts are taken from Plaintiffs' Amended Complaint, which sets forth their description of the presently thriving Ardmore community, as well as their assessment of local Defendants' arbitrary and biased blight determination in the project's earliest planning stages. (Amend.Compl. ¶¶ 9–23.) Plaintiffs argue Defendants are acting in concert to implement a vast project which will destroy the historical, environmental, physical and cultural aspects of the traditional Ardmore neighborhood. (*Id.* ¶ 18.) Plaintiffs allege Defendants' actions and inaction in developing this project amount to violations of various statutory and constitutional requirements. (*Id.* ¶¶ 24–48.) Plaintiffs assert that six million dollars in federal funds have been allocated to this project.[1] (*Id.* ¶¶ 24(b), 29.)

In Count I, Plaintiffs allege that Defendants violated NEPA by failing to complete an environmental impact statement prior to taking major federal action via the appropriation of earmarked federal funds. (*Id.* ¶¶ 26–29.) Plaintiffs allege in Count II that Defendants violated Section 4f of DTA by failing to establish feasible and prudent alternatives that would lessen the harmful impact on or taking of historic properties. (*Id.* ¶¶ 30–32.) In Count III, Plaintiffs allege that Defendants violated NHPA by failing to consult with the Advisory Committee on Historic Preservation prior to planning and implementing a project that would adversely impact historic resources. (*Id.* ¶¶ 33–36.) Count IV challenges the approval of the redevelopment

---

1. The Congressional appropriation totaling $5,803,000 is earmarked for "Ardmore transit center, Pennsylvania." (SEPTA Mot. to Dismiss Ex. B (FTA Notice of Section 5309 Bus and Bus–Related Facilities Program).)

plan by the MCPC as arbitrary and capricious under Pennsylvania's Urban Redevelopment Law. (*Id.* ¶¶ 37–38.) In Count V, Plaintiffs assert an unconstitutional taking. (*Id.* ¶¶ 39–44.) Finally, Plaintiffs allege in Count VI that Defendants violated the procedural due process guarantees of the Fifth and Fourteenth Amendments by proceeding with this project without providing the opportunity for a full factual adversary hearing. (*Id.* ¶¶ 45–48.) Plaintiffs seek review of the blight determination, an injunction to halt the redevelopment project until Defendants comply with federal statutes, and other appropriate relief to remedy Defendants' constitutional violations. (*Id. ad damnum* clauses.)

Plaintiffs aver that the Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331, as Counts I, II, and III arise under the APA, and Counts V and VI arise under the U.S. Constitution. (*Id.* ¶ 8; *see also* 5 U.S.C. §§ 704, 706(1) (2005) (APA right of action).) Furthermore, Plaintiffs allege that the Court has supplemental jurisdiction over the state law claim in Count IV pursuant to 28 U.S.C. § 1367.[2] (Amend.Compl.¶ 8.)

To assess Defendants' motions to dismiss, the Court will briefly outline the details of the redevelopment process for this project. The process is explained in the Ardmore Redevelopment Area Plan ("Redevelopment Plan"), which Plaintiffs attached as an exhibit to their Amended Complaint. (*See* Amend. Compl. Ex. A [hereinafter "Redevelopment Plan"] at 1–5.) In the first of three phases of the redevelopment process, the Ardmore Transit Center Conceptual Master Plan ("Conceptual Master Plan") was developed based on an evaluation of transit and economic revitalization needs in Ardmore. (Redevelopment Plan at 1.) Funded by a

grant from the Delaware Valley Regional Planning Commission and federal Community Development Block Grant funds, the Conceptual Master Plan was accepted by LMT in September 2003. (*Id.*)

The second phase of the process examined the design and feasability of various components of the Conceptual Master Plan. (*Id.* at 2.) During this phase, lasting from October 2003 until September 2004, the Ardmore area was designated as needing revitalization, based on criteria established in Pennsylvania's Urban Redevelopment Law. (*Id.* at 2–3; *see also* 35 PA. STAT. ANN. § 1701, *et seq.*) The redevelopment area was then "certified" by LMT's Planning Commission on July 29, 2004, and by the MCPC on August 11, 2004. (*Id.* at 3–4.) In the most recent stage of the process, after conducting stakeholder interviews and two public workshops, LMT's consultant team prepared the Redevelopment Plan. (*Id.* at 2–3.) The Redevelopment Plan was adopted by the MCPC on March 9, 2005. (Amend.Compl.¶ 21.)

In the final phase of the redevelopment process, the Redevelopment Authority plans to prepare redevelopment proposals, through a request for proposal ("RFP") process. (Redevelopment Plan at 5.) These proposals would be reviewed by the Boards of Commissioners of LMT and Montgomery County. (*Id.*) If a proposal is accepted, the Redevelopment Authority would then be authorized to acquire properties via negotiations or eminent domain power in order to facilitate implementation of the plan by private developers. (*Id.*) Defendants elaborate on these uncompleted aspects of the process, primarily via the signed declaration of Angela Murray, Assistant Director of Building and Planning for LMT. (*See* LMT Mot. to Dismiss

---

2. Plaintiffs incorrectly refer to the statute authorizing supplemental jurisdiction over state law claims as 28 U.S.C. § 1346. (Amend. Compl.¶ 8.)

Amend. Compl. Ex. A [hereinafter "Murray Decl."].) Murray details the initial planning stages as outlined in the Redevelopment Plan, and notes that many additional phases remain. (Murray Decl. ¶¶ 1–7.) Murray states that LMT anticipates the project will change before the approval of the Redevelopment Proposal, because developers may suggest alternatives to the Redevelopment Plan as part of the RFP process, and the public may advocate for revisions at numerous public hearings. (*Id.* ¶¶ 7–9.) Murray notes that since the specifics of the project have not been finalized, it is unclear which properties, if any, will be affected by the project. (*Id.* ¶ 10.) Furthermore, FTA approval is required before the money appropriated by Congress for this project can be disbursed. (*Id.* ¶ 11.) In addition, the FTA has determined that an Environmental Assessment must be performed and approved prior to dispersal of federal funding. (*Id.* ¶ 12.) An Environmental Assessment Work Plan, coordinating the reviews required under the NEPA, NHPA, and DTA, has been prepared by a consultant to LMT. (*Id.* ¶ 11.) This cooperative effort will likely take many months in addition to the time needed for establishing, revising and finalizing the Redevelopment Proposal. (*Id.* ¶¶ 9, 11–16.)

## II. STANDARD OF REVIEW

A motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) may present either a facial or factual attack on jurisdiction. *See* FED. R. CIV. PRO. 12(b)(1); *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977). A facial attack asserts that the complaint on its face fails to allege sufficient grounds to establish subject matter jurisdiction. *Cardio–Medical Assoc., Ltd. v. Crozer–Chester Med. Ctr.,* 721 F.2d 68, 75 (3d Cir.1983). In a facial attack, the court must consider the allegations of the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Mortensen,* 549 F.2d at 891. In a factual attack, the defendant challenges the court's jurisdiction based on evidence outside the pleadings and the court may review and rely upon any evidence in assessing jurisdiction. *See id.; Tanzymore v. Bethlehem Steel Corp.,* 457 F.2d 1320, 1323 (3d Cir.1972). The burden of establishing subject matter jurisdiction always remains on the plaintiff, as the party asserting jurisdiction. *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1408–09 (3d Cir.1991).

A challenge to the ripeness of an action for adjudication is appropriately brought as a motion to dismiss for lack of subject matter jurisdiction. *See Phila. Fed'n of Teachers, Am. Fed'n of Teachers, Local 3, AFL–CIO v. Ridge,* 150 F.3d 319 (3d Cir. 1998); 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1350 (3d ed.2004). The Third Circuit has stated, "Because ripeness affects justiciability, we believe that unripe claims should ordinarily be disposed of on a motion to dismiss." *Taylor Inv., Ltd. v. Upper Darby Twp.,* 983 F.2d 1285, 1290 (3d Cir.1993). Moreover, "the district court is not limited to the face of the pleadings in deciding such a motion. As long as the parties are given an adequate opportunity to address the justiciability of the claim, the district court may inquire, by affidavits or otherwise, into facts as they exist." *Id.* at 1290 n. 7.

## III. DISCUSSION

### A. Ripeness of Federal Claims

■ Ripeness is a justiciability doctrine intended to prevent a court from entangling itself in abstract disagreements by avoiding premature adjudication. *See Nat'l Park Hospitality Ass'n v. Dept. of*

*the Interior,* 538 U.S. 803, 807, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003) (*citing Abbott Labs. v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)); *see also NE Hub Partners, L.P. v. CNG Transmission Corp.,* 239 F.3d 333, 341 (3d Cir.2001). "The ripeness doctrine is 'drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction....'" *Nat'l Park Hospitality Ass'n,* 538 U.S. at 808, 123 S.Ct. 2026 (*quoting Reno v. Catholic Soc. Servs., Inc.,* 509 U.S. 43, 57 n. 18, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993)); *see also Peachlum v. City of York,* 333 F.3d 429, 433 (3d Cir.2003) (noting ripeness requirement is based in both constitutional and prudential limitations on jurisdiction).

Ripeness doctrine requires courts to evaluate "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration." *Abbott Labs.,* 387 U.S. at 149, 87 S.Ct. 1507. Under the fitness prong, courts consider whether the issues are purely legal, the degree of finality of the challenged action, whether the claim involves uncertain or contingent events that may not occur as anticipated, the extent to which further factual development would aid in decisionmaking, and whether the parties are sufficiently adverse. *See NE Hub Partners,* 239 F.3d at 342 n. 8; *Phila. Fed'n of Teachers,* 150 F.3d at 323. Under the hardship prong, courts consider whether the challenged action creates direct and immediate harm to the plaintiffs, such that denial of review will present plaintiffs with costly choices. *See NE Hub Partners,* 239 F.3d at 342 n. 8; *Phila. Fed'n of Teach-*

*ers,* 150 F.3d at 323. The Third Circuit has refined this analysis in cases addressing pre-enforcement actions, instructing courts to consider adversity, conclusiveness and utility. *See Peachlum,* 333 F.3d at 435 (*citing Step–Saver Data Sys., Inc. v. Wyse Tech.,* 912 F.2d 643, 647 (3d Cir. 1990)); *see also NE Hub Partners,* 239 F.3d at 342 n. 9 (noting that *Step–Saver* "is a distillation of the factors most relevant to the *Abbott Labs* considerations"). A court must consider "whether the parties' interests are sufficiently adverse; [ ] whether the court can issue a conclusive ruling in light of potentially evolving factual developments; and [ ] whether the decision will render practical help to the parties." *Peachlum,* 333 F.3d at 435 (*citing Step–Saver,* 912 F.2d at 647). The Third Circuit has utilized both the *Abbott Labs* and *Step–Saver* variations of the ripeness inquiry, depending on the circumstances of the case.[3] *See Phila. Fed'n of Teachers,* 150 F.3d at 323 n. 4. The Court will assess the ripeness of each of Plaintiffs' federal claims in turn.

### 1. Ripeness Under the APA

Pursuant to 5 U.S.C. § 704, "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5 U.S.C. § 704 (2005). Agency action under the APA includes the failure to act, as defined in 5 U.S.C. § 551(13). *See* 5 U.S.C. § 551(13) (" '[A]gency action' includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."). When faced

---

**3.** The Third Circuit has also highlighted the following factors underpinning ripeness:

[A]re the parties in a sufficiently adversarial posture to be able to present their positions vigorously; are the facts of the case sufficiently developed to provide the court with enough information on which to decide the matter conclusively; and is a party genuinely aggrieved so as to avoid expenditure of judicial resources on matters which have caused harm to no one.

*Peachlum,* 333 F.3d at 433–34 (*citing* ERWIN CHEMERINSKY, FEDERAL JURISDICTION § 2.3.1 (1989)).

with an agency's failure to act, "[t]he reviewing court shall ... compel agency action unlawfully withheld or unreasonably delayed...." 5 U.S.C. § 706(1). However, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take.*" *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 124 S.Ct. 2373, 2379, 2381, 159 L.Ed.2d 137 (2004) (emphasis in original) ("The prospect of pervasive oversight by federal courts over the manner and pace of agency compliance with such congressional directives is not contemplated by the APA."); *see also* 5 U.S.C. § 701(a)(2) (judicial review of agency action or inaction is not permitted if "agency action is committed to agency discretion by law").

■ Numerous courts have noted the difficulty of determining the proper analytical approach for assessing challenges to agency inaction under the APA. *See, e.g., Am. Disabled for Attendant Programs Today v. HUD*, Civ. A. No. 96–5881, 1998 WL 113802, at *2 n. 2 (E.D.Pa. Mar.12, 1998) (citing cases). The two reviewability requirements of the APA—final agency action and no other adequate remedy—function similarly to the requirements of justiciability. *Id.* (*citing Seafarers Int'l Union v. U.S. Coast Guard*, 736 F.2d 19 (2d Cir. 1984)). As such, courts have reviewed agency inaction on grounds of standing, ripeness and finality of agency action, and adequacy of alternative remedy. *See id.* Although the Court recognizes that Plaintiffs' APA claims might be assessed under either a standing or a ripeness analysis, the Court will proceed on ripeness grounds, because the Third Circuit has treated finality as a ripeness issue.[4] *See Solar Turbines Inc. v. Seif*, 879 F.2d 1073, 1080 (3d Cir.1989); *see also FTC v. Standard Oil of Cal.*, 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980). As finality under the APA is considered a jurisdictional question, it presents an appropriate threshold inquiry for the Court. *See Calio v. Pa. Dep't of Transp.*, 101 F.Supp.2d 325, 329 (E.D.Pa.2000) ("The requirement of a final agency action has been considered jurisdictional. If the agency action is not final, the court therefore cannot reach the merits of the dispute.") (*quoting DRG Funding Corp. v. Sec'y of HUD*, 76 F.3d 1212, 1214 (D.C.Cir.1996)).

■ The statutory language of the APA does not explicitly define what qualifies as "final" agency action. *Hindes v. FDIC*, 137 F.3d 148, 162 (3d Cir.1998). "The core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Franklin v. Massachusetts*, 505 U.S. 788, 797, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992); *see also Bennett v. Spear*, 520 U.S. 154, 177–78, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (noting that for agency action to be final: (1) it must mark the consummation of the decisionmaking process; and (2) rights must be determined or legal consequences must flow from action). Agency action is generally not considered ripe for review "until the scope of the controversy

---

4. Ripeness, which determines *when* a party may bring a claim, provides a slightly more narrow ground for dismissal than standing, which implicates the question of *who* may bring suit. *See Phillies Tomato & Produce Corp. v. Veneman*, Civ. A. No. 01–3502, 2002 WL 32356398, at *6 (E.D.Pa. Mar.28, 2002) ("[W]hereas ripeness is concerned with *when* an action may be brought, standing focuses on *who* may bring a ripe action.") (*quoting Joint Stock Soc'y v. UDV North Am., Inc.*, 266 F.3d 164, 174 (3d Cir.2001)) (emphasis in original). However, in this case, the questions are linked; neither standing nor ripeness is satisfied without final agency action. Accordingly, the Court's finality analysis pursuant to ripeness doctrine would also dispose of the standing issue.

has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action ... that harms or threatens to harm [the plaintiff]." *Nat'l Park Hospitality Ass'n,* 538 U.S. at 808, 123 S.Ct. 2026 (*quoting Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 891, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).

■ Courts have been pragmatic when interpreting the finality element of ripeness under the APA. *See Standard Oil,* 449 U.S. at 239, 101 S.Ct. 488; *see also CEC Energy Co., Inc. v. Pub. Serv. Comm'n of the V.I.,* 891 F.2d 1107, 1110 (3d Cir.1989); *Hindes,* 137 F.3d at 162 (noting that finality of agency action is determined by its consequences or practical effects). Additionally, the Third Circuit has listed numerous factors that must be considered in assessing finality, which overlap significantly with the aforementioned factors for ripeness. *See CEC Energy Co.,* 891 F.2d at 1110. The finality factors include:

(1) whether the decision represents the agency's definitive position on the question; (2) whether the decision has the status of law with the expectation of immediate compliance; (3) whether the decision has immediate impact on the day-to-day operations of the party seeking review; (4) whether the decision involves a pure question of law that does not require further factual development; and (5) whether immediate judicial review would speed enforcement of the relevant act.

*Solar Turbines Inc.,* 879 F.2d at 1080 (*citing Standard Oil,* 449 U.S. at 239–40, 101 S.Ct. 488). With the finality and ripeness framework in mind, the Court will examine Plaintiffs' federal statutory claims brought pursuant to the APA.

### i. NEPA Claim

■ Plaintiffs allege that Defendants violated NEPA by failing to complete an environmental impact statement in accordance with 42 U.S.C. § 4332.[5] (Amend. Compl.¶¶ 26–29.) NEPA requires that "all agencies of the Federal Government shall ... include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on ... the environmental impact of the proposed action."[6] 42 U.S.C. § 4332 (2005). The Council on Environmental Quality has issued federal regulations to assist in the implementation of NEPA, including regulations establishing the timing for completion of an environmental review. *See* 42 U.S.C. § 4332; 40 C.F.R. §§ 1501.2, 1502.5 (2005). Although the regulations emphasize that "[a]gencies shall integrate the NEPA process with

**5.** Plaintiffs incorrectly refer to the relevant NEPA statute as 42 U.S.C. § 1821. (Amend. Compl.¶ 27.)

**6.** Although state and local agencies "may by agreement with the lead [federal] agency become a cooperating agency," it is still primarily the lead agency's responsibility to prepare an environmental review. 40 C.F.R. §§ 1508.5, 1508.16. Some circuits have noted that non-federal parties may be enjoined, pending completion of an environmental impact statement or assessment, when such parties enter into a joint venture or partnership with a federal agency. *See Envtl. Rights Coal., Inc. v. Austin,* 780 F.Supp. 584, 588, 594 (S.D.Ind.1991) (listing cases from First, Second, and Seventh Circuits). However, courts agree that NEPA only mandates completion of an environmental review by federal agencies, and that courts may only order a federal defendant to prepare an environmental impact statement or assessment. *See id.* at 594, 596; *Save Barton Creek Ass'n v. FHWA,* 950 F.2d 1129, 1138–39 (5th Cir.1992); *Gettysburg Battlefield Pres. Ass'n v. Gettysburg Coll.,* 799 F.Supp. 1571, 1577 (M.D.Pa.1992).

other planning at the earliest possible time," for projects where state or local planners submit applications to the agency "appropriate environmental assessments shall be commenced no later than immediately after the application is received." 40 C.F.R. §§ 1501.2, 1502.5(b). While "[f]ederal agencies are *encouraged* to begin preparation of such assessments or statements earlier, preferably jointly with applicable State or local agencies," an environmental review is not required until the federal agency receives an application. 40 C.F.R. § 1502.5(b) (emphasis added). Here, as no application has been submitted to the FTA, an environmental review is not yet required.

Defendants further support their argument that they were not yet required to undergo NEPA review with the claim that there was no "proposal for legislation or other major Federal action." *See* 42 U.S.C. § 4332. The federal regulations define legislation to include "a bill or legislative proposal to Congress developed by or with the significant cooperation and support of a Federal agency, but *does not include requests for appropriations.*" 40 C.F.R. § 1508.17 (emphasis added); *see also Andrus v. Sierra Club,* 442 U.S. 347, 364–65, 99 S.Ct. 2335, 60 L.Ed.2d 943 (1979) (holding that "appropriation requests constitute neither 'proposals for legislation' nor 'proposals for ... major Federal actions'" within NEPA's procedural requirements). Thus, the approximately six million dollar appropriation of federal funds earmarked for this project fails to qualify as a proposal for legislation under the NEPA requirements. Furthermore, major federal action is defined under the regulations to include "actions with effects that may be major and which are potentially subject to Federal control and responsibility," including "projects and programs entirely or partly financed, assisted, conducted, regulated, or approved by federal agencies." 40 C.F.R. § 1508.18. Whether the project in this case qualifies as a major federal agency remains uncertain at this juncture, as the federal funds have not been approved for dispersal and the FTA has had limited contact with the local planners.

 Applying these federal regulations to the facts here, Plaintiffs' NEPA claim is not ripe. Finality has not been satisfied because the alleged agency inaction—the FTA's failure to complete an environmental review at this point—does not represent a final decision by the FTA.[7] Plaintiffs' claim involves uncertain or contingent events, including the specifics of the final project and the extent of future federal involvement. Further factual development is required before the Court can assess Plaintiffs' claims and Defendants' compliance with federal statutes. The hardship analysis suggests that the inaction Plaintiffs challenge has not created direct and immediate harm to Plaintiffs—especially considering that the impact on Plaintiffs' properties and homes is unclear at this time. Accordingly, because Plaintiffs' NEPA claim is not ripe, the Court dismiss-

---

**7.** Plaintiffs rely on *Ohio Forestry Ass'n, Inc. v. Sierra Club* for the proposition that a NEPA claim is ripe when a federal agency fails to act. (R. at 53 (Oct. 27, 2005).) However, that case only makes a federal agency's *failure to comply with the NEPA procedure* actionable—a failure which has not yet occurred in this case, and which may never occur. *See Ohio Forestry Ass'n, Inc. v. Sierra Club,* 523 U.S. 726, 737, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998) ("[A] person with standing who is injured by a failure to comply with the NEPA procedure may complain of that failure at the time the failure takes place, for the claim can never get riper."). Mere failure to act by an agency does not establish a ripe claim when such failure does not violate the NEPA provisions and occurs prior to the deadline established by the federal regulations.

es this claim for lack of subject matter jurisdiction.

### ii. NHPA Claim [8]

▮ Plaintiffs allege that Defendants violated NHPA by failing to consider the project's effect on historic areas and by failing to consult with the Advisory Committee on Historic Preservation prior to the planning and implementation of the project. (Amend.Compl.¶¶ 33–36.) Pursuant to 16 U.S.C. § 470f, "[t]he head of any Federal agency having direct or indirect jurisdiction over a proposed Federal or federally assisted undertaking ... shall [ ] prior to the approval of the expenditure of any Federal funds on the undertaking ... take into account the effect of the undertaking on any [historic district, building or site]." 16 U.S.C. § 470f (2005) (also requiring federal agency head to give Advisory Council on Historic Preservation opportunity to comment on any such undertaking). An undertaking includes "a project, activity, or program funded in whole or in part under the direct or indirect jurisdiction of a Federal agency, including those carried out by or on behalf of a Federal agency; those carried out with Federal financial assistance; and those requiring a Federal permit, license or approval." 36 C.F.R. § 800.16(y) (2005). The NHPA process is initiated by an agency official who "shall determine whether the proposed Federal action is an undertaking as defined in § 800.16(y) and, if so, whether it is a type of activity that has the potential to cause effects on historic properties." 36 C.F.R. § 800.3(a).

Unlike NEPA, both the "agency official" and the "head of the agency" may be state or local actors, provided such entities have been delegated legal responsibility for compliance with NHPA requirements. 36 C.F.R. §§ 800.16(k), 800.2(a) (noting, however, that statutory obligation to complete NHPA process ultimately rests with federal agency). The NHPA regulations define approval of the expenditure of funds as "any final agency decision authorizing or permitting the expenditure of Federal funds or financial assistance on an undertaking...." 36 C.F.R. § 800.16(c); *see also Gettysburg Battlefield Pres. Ass'n,* 799 F.Supp. at 1580 (noting that while "case law addressing NHPA is far less extensive than that addressing NEPA, this court is persuaded that the invocation of NHPA involves a similar search for federal involvement as NEPA"). Clearly there has been no final agency decision authorizing the expenditure of federal funding for this project—as the FTA underscores in its motion, the process for applying for FTA approval has not yet been completed. (FTA Mot. to Dismiss Amend. Compl. at 4–5, 10–11 (noting federal regulations require that prior to providing any funds for final design, construction or related activities, FTA must receive notification of local actors' intent to apply for funds, and must comply with NEPA, NHPA and section 4f procedures).)

The federal regulations implementing NHPA also establish the timing for completion of the NHPA process. *See* 36 C.F.R. §§ 800.2(b), 800.3(a), 800.1(c). Although the regulations state that "[t]he agency official shall ensure that the [NHPA] process is initiated early in the undertaking's planning," ultimately "[t]he agency official must complete the [NHPA] process 'prior to the approval of the expenditure of any Federal funds on the undertaking [ ].'" 36 C.F.R. § 800.1(c). The regulations clarify that the agency official

---

**8.** The Third Circuit has recognized a private right of action under NHPA beyond merely allowing suit pursuant to the APA. *See Boar-* *head Corp. v. Erickson,* 923 F.2d 1011, 1017 (3d Cir.1991).

may conduct or authorize "nondestructive project planning activities" prior to completion of the NHPA process, "provided that such actions do not restrict the subsequent consideration of alternatives to avoid, minimize or mitigate [the impact] on historic properties." *Id.* The regulations also state that the NHPA review should be coordinated, as appropriate, with the NEPA and other reviews, as well as with the overall planning process and schedule. 36 C.F.R. § 800.3(b); *see also* 36 C.F.R. § 800.8(a) ("Federal agencies are encouraged to coordinate compliance with [NHPA and NEPA].").

■■■ As these regulations illustrate, Plaintiffs' claim under NHPA is simply not ripe. The fitness and hardship analysis undertaken in considering the NEPA claim applies with equal force to the NHPA claim. Moreover, the approval of the expenditure of federal funds acts as the deadline for agency action, and because that deadline has not passed, there has not been the requisite final agency decision to establish a ripe claim. Accordingly, as Plaintiffs' NHPA claim is not ripe, the Court dismisses this claim for lack of subject matter jurisdiction.

### iii. Section 4f Claim

■■■ Plaintiffs allege that Defendants violated Section 4f of the DTA by failing to establish feasible and prudent alternatives to the taking of or impact on historic properties. (*Id.* ¶¶ 30–32.) Pursuant to 49 U.S.C. § 303, "the Secretary [of Transportation] may approve a transportation program or project ... requiring the use of [historic land] only if ... there is no prudent or feasible alternative to using that land; and ... the program or project includes all possible planning to minimize harm to [historic land]." 49 U.S.C. § 303(c) (2005). The absence of ripeness in this case is unmistakable: as the trans-

portation secretary has not yet approved the project, the requisite finality required for the Court to assess agency inaction is not present. Thus, in accordance with the fitness and hardship analysis adopted above, Plaintiffs' Section 4f claim is also not ripe. The Court dismisses this claim for lack of subject matter jurisdiction.

### 2. Takings Claim

■■■ Plaintiffs also assert an unconstitutional takings claim in violation of the Fifth and Fourteenth Amendments. (Amend.Compl.¶¶ 39–44.) The Fifth Amendment, applicable to the States through the Fourteenth Amendment, mandates: "[n]or shall private property be taken for public use, without just compensation." U.S. Const. amend. V; *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 176 n. 1, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). Takings claims are not ripe until the requirement of finality has been met; a state or federal action which "does not conclusively determine whether [plaintiff] will be denied all reasonable beneficial use of its property ... is not a final, reviewable decision." *Williamson County*, 473 U.S. at 194, 105 S.Ct. 3108. Furthermore, if a person has not sought compensation through the established procedures for the taking of his property, his claim is not ripe. *Id.* at 194–95, 105 S.Ct. 3108. "[B]ecause the Fifth Amendment proscribes takings *without just compensation,* no constitutional violation occurs until the compensation has been denied." *Id.* at 195 n. 13, 105 S.Ct. 3108 (emphasis in original).

Additionally, courts in this Circuit have held that until a final decision on a taking has been reached, such a claim is not ripe. *See Lauderbaugh v. Hopewell Twp.*, 319 F.3d 568, 575 (3d Cir.2003) ("[T]he finality rule allows a suit whenever a 'decision

maker has arrived at a definitive position on the issue that inflicts an actual, concrete injury.'") (*quoting Williamson County*, 473 U.S. at 192, 105 S.Ct. 3108); *Acierno v. Mitchell*, 6 F.3d 970, 974 (3d Cir.1993) (constitutional challenges to land-use decisions are not ripe until authorities render a final decision); *Omnipoint Commc'ns, Inc. v. Zoning Hearing Bd. of E. Pennsboro Twp.*, 4 F.Supp.2d 366, 370 (M.D.Pa.1998) ("[A] landowner's claim challenging the actions of local land planning authorities is not ripe until those authorities have had an opportunity to render a final decision on the dispute.").

Here, no final decision has been made by the local, state or federal Defendants regarding the taking of *any* private property without just compensation, let alone the taking of Plaintiffs' property. Thus, Plaintiffs' takings claim is not ripe for review, and the Court dismisses this claim for lack of subject matter jurisdiction.

### 3. Procedural Due Process Claim

■ Plaintiffs allege that Defendants violated their procedural due process rights under the Fifth and Fourteenth Amendments by proceeding with this project without providing them the opportunity for a full factual adversarial hearing. (Amend.Compl.¶¶ 45–48.) The Third Circuit has extended the application of the finality rule, as outlined above, to procedural due process claims. *See Taylor Inv., Ltd. v. Upper Darby Twp.*, 983 F.2d 1285, 1292–93 (3d Cir.1993) (noting agreement with other circuits who have "regularly applied *Williamson's* finality rule to procedural due process claims"). The Third Circuit further emphasized that the Supreme Court in *Williamson* did not ignore the reality that land-use decisions may cause constitutional injuries, but "the Court held that local authorities should be given the opportunity to fully and finally

determine the scope of the injury before federal claims ripen." *Id.* at 1294.

Plaintiffs point to the following as final action to support their due process claim: (1) the Redevelopment Plan adopted by the Township and County; (2) the Ardmore area blight designation; (3) the Congressional appropriation of almost six million dollars earmarked for the Ardmore transit center; (4) the letters sent to property owners regarding the potential condemnation of their properties as part of this project; and (5) the combined planning direction established by Defendants. (Memo. in Opp'n to Defs.' Mot. to Dismiss Amend. Compl. at 30–31; Amend. Compl. ¶ 24.) In essence, however, the only "final" decision Plaintiffs can point to is the blight designation of the Ardmore neighborhood—all other actions taken by the local Defendants are part of the planning stages, and the FTA has neither begun its actions nor reached its deadline to act in the decision-making process.

During oral argument the Court emphasized the importance of meaningful public participation in the continuing planning for this project. (R. at 64 ("I think the defendants recognize that this Court in particular is concerned about meaningful input of your clients.").) The opportunity for meaningful public input, the hallmark of due process, must exist throughout the project development process. Indeed, LMT has represented to the Court that meaningful due process procedures will be in place to protect Plaintiffs' interests and rights. (R. at 69 ("The township hears loud and clear the direction of the Court and understands the importance of meaningful public involvement.").) At this juncture, however, there has not been sufficient finality in the decision-making of this project to permit meaningful review of Plaintiffs' due process claim. Thus, this claim is not ripe, and the Court dismisses

this claim for lack of subject matter jurisdiction.

### B. Request for Discovery to Establish Subject Matter Jurisdiction

■ The Court has wide discretion in resolving jurisdictional factual disputes and is under no obligation to grant Plaintiffs' request for discovery to help establish subject matter jurisdiction. "Trial judges enjoy substantial procedural flexibility in handling Rule 12(b)(1) motions. But the record must clearly establish that after jurisdiction was challenged the plaintiff had an opportunity to present facts by affidavit or by deposition, or in an evidentiary hearing, in support of his jurisdictional contention." *Berardi v. Swanson Mem'l Lodge No. 48*, 920 F.2d 198, 200 (3d Cir.1990) (internal citation omitted). The Court has provided Plaintiffs numerous opportunities to satisfy their burden of establishing jurisdiction. Ultimately, the pleadings, motions, supporting affidavits and documentation presented to the Court reveal that subject matter jurisdiction is lacking because Plaintiffs' federal claims are not ripe. Therefore, the Court denies Plaintiffs' request for additional discovery.

### C. Supplemental Jurisdiction Over State Law Claim

Pursuant to 28 U.S.C. § 1367, "a district court may decline to exercise supplemental jurisdiction over a [non-federal claim] if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). As the Court has dismissed all Plaintiffs' federal claims, it declines to exercise jurisdiction over Plaintiffs' related state law claim, which may be pursued in the appropriate Pennsylvania court.

### IV. CONCLUSION

For the foregoing reasons, the Court lacks subject matter jurisdiction over Plaintiffs' federal claims based on ripeness grounds and declines to exercise jurisdiction over Plaintiffs' state law claim. Thus, Defendants' motions to dismiss the Amended Complaint are granted.[9] An appropriate Order follows.

### ORDER

AND NOW, this 9th day of November, 2005, upon consideration of Defendants' motions to dismiss, Plaintiffs' response thereto, Defendants' replies thereon, and for the foregoing reasons, it is hereby **ORDERED** that:

1. Lower Merion Township's Motion to Dismiss the Amended Complaint (Document No. 25) is **GRANTED**.

2. Jennifer Dorn's, as Administrator of the Federal Transit Administration, Motion to Dismiss the Amended Complaint (Document No. 26) is **GRANTED**.

3. Montgomery County Planning Commission's Motion to Dismiss the Amended Complaint (Document No. 27) is **GRANTED**.

4. Southeastern Pennsylvania Transit Authority's Motion to Dismiss the Amended Complaint (Document No. 28) is **GRANTED**.

5. Defendants' initial motions to dismiss (Document No. 15, Document No. 16, Document No. 17, Document No. 18) are **DENIED as moot**.

6. The Clerk of Court is directed to close this case.

---

9. As the resolution of the ripeness inquiry is dispositive, the Court need not address Defendants' additional grounds for dismissal based on failure to state a claim, failure to join an indispensable party, or lack of standing.